**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NEIYERVER ADRIÁN LEON RENGEL

Plaintiff,

v.

Case No.  1:26-cv-01008

UNITED STATES OF AMERICA

Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.   INTRODUCTION..................................................................................................... 1

II.  LEGAL STANDARD ............................................................................................... 4

III. VENUE FACTS ........................................................................................................ 7

IV.  ARGUMENT ............................................................................................................ 9

    A.  Sufficient Acts Occurred in D.C. To Maintain Venue................................... 9

    B.  Venue Over One Claim Supports Venue Over The Entire Case................... 14

    C.  The Government's Overstated Effects Test is Inapplicable and Misreads *Reuber*..... 15

       i. The D.C. Circuit focuses on acts or omissions, not merely effects. ........................ 15

       ii. Even the Government's overstated effects test permits venue in D.C. under the facts alleged here........................................................................................... 19

V.   IF IN DOUBT, THE COURT SHOULD HOLD A HEARING ON FACTUAL ISSUES RELATING TO VENUE....................................................................................... 22

    A. An Evidentiary Hearing and Discovery is Appropriate Where, as Here, Defendant Disputes the Allegations of the Complaint and Where the Defendant is in Exclusive Possession of Determinative Information. ........................................ 23

    B. Even If The Court Determines Venue Is Not Proper in D.C., The Interest of Justice Requires Transfer. ........................................................................................ 25

VI.  CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013) ........................................................ 10

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ......................................................................... 20

*Astakhov v. United States Citizenship & Immigration Servs.*,
   698 F. Supp. 3d 135 (D.D.C. 2023) ......................................................................... 26

*Attkisson v. Holder*, 241 F. Supp. 3d 207 (D.D.C. 2017) .............................................. 19

*Beattie v. United States*, 756 F.2d 91 (D.C. Cir. 1985) ...................................... 6, 14, 15

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080 (D.C. Cir. 1998) ........... 24

*Clark v. DocuSign, Inc.*, No. 21-cv-1007, WL 16985185 (April 22, 2022) ............................. 24

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 146 S.Ct. 959 (2026) ................................ 13

*Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274 (D.D.C. 2002) ..................................... 6

*Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207 (D.D.C. 2014) ........................... 24

*Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1 (D.D.C. 2003) ........................... 24

*EPA v. Calumet Shreveport Refining, L.L.C.* 605 U.S. 627 (2025) ..................................... 21

*F.C.C. v. United States*, No. 22CV5057, 2023 WL 5718440 (E.D.N.Y. Sept. 5, 2023) ............. 25

*Fam v. Bank of America NA (USA)*, 236 F. Supp. 3d 397 (D.D.C. 2017) ................................ 6, 7

*Forest v. United States*, 539 F. Supp. 171 (D. Mont. 1982) ................................... passim

*Franz v. United States*, 591 F.Supp. 374 (D.D.C. 1984) ................................... 4, 5, 11, 12

*Gill v. United States*, 415 F. Supp. 3d 127 (D.D.C. 2019) ................................... passim

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) ................................................... 7, 25

*Hahn v. U.S.* 457 F. Supp. 2d 27 (D.D.C. 2006) ................................................... 4

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011) ..................................... 11

*Hoffman v. Fairfax Cnty. Redevelopment & Hous. Auth.*, 276 F. Supp. 2d 14 (D.D.C. 2003) .... 26

*Hurn v. Oursler*, 289 U.S. 238 (1933) ............................................................ 14

*Ignatiev v. United States*, 238 F.3d 464 (D.C. Cir. 2001) ................................... 4, 23, 24

*In re Sofaer*, 728 A.2d 625 (D.C. 1999) ......................................................... 13

*James v. Verizon Servs. Corp.*, 639 F.Supp.2d 9 (D.D.C.2009) ..................................... 6

*Jones v. Food & Drug Admin.*, No. 24-1223-SLS,
   2025 WL 2709769 (D.D.C. Sept. 23, 2025) ................................................. 26

*Khalil v. L-3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134 (D.D.C. 2009) ................................ 6

*Lamont v. Haig*, 590 F.2d 1124 (1978) ........................................................... 5

*Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir. 1978) ................................................. 5, 9, 22

*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979) ............................................. 10

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) ..................................... 7

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ......................................... 23

*Patel v. Phillips*, 933 F. Supp. 2d 153 (D.D.C. 2013) ................................... 1, 9, 19, 21

*Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1985) ................................... passim

*Richards v. United States*, 369 U.S. 1 (1962) ................................................. 16, 18, 19

*Sami v. United States* 617 F.2d 755 (D.C. Cir. 1979) ................................................. 18

*Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19 (D.D.C. 2009)........ 4, 25, 26

*Sanchez-Mercedes v. Bureau of Prisons,* 453 F. Supp. 3d 404 (D.D.C. 2020) ............................ 20

*Shawnee Tribe v. United States,* 298 F.Supp.2d 21 (D.D.C. 2002)...................................... 6

*Sierra Club v. Johnson*, 623 F. Supp. 2d 31 (D.D.C. 2009) ...................................... 4, 6

*Simpson v. Federal Bureau of Prisons* 496 F. Supp. 2d 187 (D.D.C. 2007).............................. 20

*Sinclair v. Kleindienst*, 711 F.2d 291 (D.C. Cir. 1983) ...................................... 25

*Sosa v. Alvarez-Machain*, 542 U.S. (2004)................................................. 18, 19

*Sullivan v. Stroop*, 496 U.S. 478 (1990) ................................................. 18

*Swafford v. United States*, No. 4:12-CV-0220-HLM,
    2013 WL 12207597 (N.D. Ga. Feb. 4, 2013)................................................. 25

*Thornwell v. United States*, 471 F.Supp. 344 (D.D.C. 1979) ...................................... 5

*Travis v. Anthes Imperial Ltd.,* 473 F.2d 515 (8th Cir. 1973) ...................................... 15

*United States v. Shipp*, 203 U.S. 563 (1906) ................................................. 22

*Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.,*
    600 F. Supp. 3d 73 (D.D.C. 2022) ................................................. 24, 25

*Void-El v. O'Brien*, 811 F. Supp. 2d 255 (D.D.C. 2011)...................................... 12, 20

*Williams v. Lutnick*, No. 24-1492-SLS, 2025 WL 1293349 (D.D.C. May 5, 2025) ................... 26

*Williams v. United States*, 932 F. Supp. 357 (D.D.C. 1996)...................................... 5

**Statutes**

28 U.S.C. § 1346(b)(1) ................................................................. 18

28 U.S.C. § 1391................................................................. 5

28 U.S.C. § 1391(b)................................................................. 5

28 U.S.C. § 1391(b)(2) ................................................................. 5

28 U.S.C. § 1402(b) ................................................................. passim

28 U.S.C. § 1404(a) ................................................................. 4

28 U.S.C. § 1406(a) ................................................................. 4, 7, 25, 26

28 U.S.C. § 2680(k)................................................................. 18

**Rules**

Fed. R. Civ. P. 12(i).................................................................. 3, 4, 22

Fed. R. Civ. P. 7(b)(1)................................................................. 4

**Regulations**

5 C.F.R. § 2637.201(d)(1)................................................................. 13

**Other Authorities**

14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3826 (4th ed. 2013)............. 7

2A Norman J. Singer, *Statutes and Statutory Construction* § 46:06, at 194 (6th rev. ed. 2000).. 19

iii

## I.   INTRODUCTION

The Defendant's Motion to Dismiss, ECF No. 19, ("Motion") misstates the law and ignores the central factual allegations in the Complaint: that specific, identified, high-ranking federal officials, acting in concert in Washington D.C., conceived, authorized, and directed the execution of a centralized, multi-prong scheme to demonize and inflict physical and mental punishment on Venezuelan nationals, and deliberately sought to avoid the constraints of constitutional due process and existing immigration law. Compl. ¶¶ 15–17, 137. The most important acts in that nationwide scheme occurred in Washington D.C. and were the but-for and proximate causes of the injuries to the Plaintiff, Neiyerver Adrián Leon Rengel, giving rise to his claims under the Federal Tort Claims Act ("FTCA"). Compl. ¶¶ 19, 110, 138.

Specifically, named federal officials conceived of and issued the Alien Enemies Act ("AEA") Proclamation and its implementing guidance in Washington D.C. as the primary vehicles to authorize and direct the tortious conduct, Compl. ¶¶ 19, 59, 61. Those acts occurred in Washington D.C. and were intended to have nationwide effects, rather than to target any particular individual in any particular state. Additionally, specific named federal officials directed the violation of an order from this Court, sitting here in the District of Columbia, in order to effectuate the torts. Compl. ¶¶ 18-19, 100, 102, 104,109.

"Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to plaintiff's cause of action took place here." *Gill v. United States*, 415 F. Supp. 3d 127, 142 (D.D.C. 2019) (quoting *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013) (Boasberg, J.). Here, the Complaint specifically alleges numerous operative "acts and omissions" in this district which are more than sufficient to justify venue in this Court in relation to at least one of Plaintiff's FTCA causes of action. *Compare Gill*, 415 F.

1

Supp. 3d at 142 (finding venue improper when the only connection to D.C. alleged amounted to no more than non-specific, "vague allegation[s]") *with* Compl. ¶¶ 15, 18-19, 89-91, 104, 109, 110, 137 (detailing specific actions in D.C. by specific named federal officials). Rather than grappling with Plaintiff's specific allegations of D.C.-based conduct, the Defendant mischaracterizes or implicitly disputes the Complaint's allegations as detailing no D.C. conduct. *See, e.g.,* Mot. at 4, 5, 6, 7. The Defendant claims that "[f]or purposes of this motion only, the United States accepts Plaintiff's non-conclusory factual allegations in his Complaint as true," Mot. at 2, yet it later asserts that none "of the acts or omissions that caused Plaintiff's alleged damages occur in the District of Columbia," Mot. 4. Those two statements are irreconcilable. As detailed by this brief, the Complaint alleges numerous acts within D.C., including the issuance of the Proclamation, and the directives to continue the removal flights in defiance of this Court's order. Compl. ¶ 19; see also Compl. ¶¶ 59, 61, 91, 104, 137. Thus, this Court should adopt the Government's stated, albeit misapplied, standard, but ignore its conclusory and erroneous assertion that no acts or omissions within D.C. have been alleged.

The Defendant also proposes an inaccurate, overstated version of an "effects test" to establish venue for FTCA claims that, under the Government's interpretation, would control in every case, despite the D.C. Circuit expressly declining to adopt that test in *Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1985). The Defendant's approach is so extreme that it would seemingly foreclose D.C. as the proper venue for a FTCA lawsuit anytime a plaintiff is injured outside of the District regardless of the amount and importance of activity here. *See, e.g.*, Mot. at 7 (arguing that "even if [a wide number of federal officials] devised and authorized a 'plan to expel Venezuelan nationals' from the District of Columbia, the 'intended effects' of that plan and those policies [and the] goal of the 'implementation of the AEA' was to apprehend" individuals

elsewhere and deport them to El Salvador, thereby making a lawsuit in D.C. improper). That is not the law in the D.C. Circuit.

Moreover, the facts Plaintiff alleges bear no resemblance to the cases cited by the Defendant, in which plaintiffs alleged only the mere presence of higher-level federal officials in D.C. or their authority to supervise the actors who committed the tort, while the tortious, liability-generating conduct occurred in another jurisdiction. Here, by contrast, the conduct in D.C. was active, essential to the ultimate injury, and itself discrete and tortious—and the Defendant presents no specific facts to suggest that such acts were in fact intended to only affect specific individuals in Texas. Instead, for instance, the Proclamation, its implementing guidance from the Department of Justice ("DOJ"), and the DOJ's insistence on effectuating the Proclamation despite contrary court orders, were components of a national scheme developed and directed by government actors in D.C., and intended to have nationwide impact rather than to have effect in any single external jurisdiction. Compl. ¶¶ 13, 16, 17. Washington D.C. is thus a proper venue.

To the extent the Court concludes that any venue-determinative fact is genuinely disputed rather than resolved on the face of the Complaint, Plaintiff respectfully requests that this Court schedule a hearing pursuant to Fed. R. Civ. P. 12(i) and permit targeted discovery into contested, determinative venue issues, given that the Defendant disputes the truth of the allegations in the Complaint. *Compare, e.g.,* Mot. at 7 ("the 'intended effects' of [Administration's] plan and those policies as to Plaintiff were in Texas") *with* Compl. ¶¶ 19, 137 (describing unlawful plan conceived, authorized, and directed in D.C., with effects intended nationwide); *see also Ignatiev*

3

*v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("The district court erred in not allowing discovery . . . prior to dismissing for lack of subject matter jurisdiction.").[1]

Finally, if this Court ultimately concludes that venue is not proper in D.C., a long line of cases hold that the proper remedy under 28 U.S.C. § 1406(a) is to transfer this case to the Southern District of Texas, rather than to dismiss it. *See, e.g.*, *Gill*, 415 F. Supp. 3d at 142("Generally, the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them") (quoting *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 22 (D.D.C. 2009)).[2]

## II.    LEGAL STANDARD

"Where a special venue provision places venue in a specific district, such a provision controls venue for that claim." *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009). The special venue provision for the FTCA states that an action "may be prosecuted only in the judicial district where the plaintiff resides *or wherein the act or omission complained of occurred*." 28 U.S.C. § 1402(b) (emphasis added).

With regards to the second prong of that provision, "[c]ourts in this Circuit have construed Section 1402(b) broadly to allow venue 'if sufficient activities giving rise to plaintiff's cause of action took place [in the District].'" *Hahn v. U.S.* 457 F. Supp. 2d 27, 29 (D.D.C. 2006) (quoting *Franz v. United States*, 591 F.Supp. 374, 378 (D.D.C. 1984)); *see also Gill*, 415 F. Supp. 3d at 142

---

[1] Under separate cover, Plaintiff will promptly move for targeted discovery and further argument into key venue-related factual issues that Defendant has contested pursuant to Fed. R. Civ. P. 12(i) and Fed. R. Civ. P. 7(b)(1).

[2] The Government's Motion incorrectly cites 28 U.S.C. § 1404(a), which grants a district court the discretion to transfer a case upon "the convenience of parties and witnesses, in the interest of justice." The controlling statute would be 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

("The prevailing interpretation of section 1402(b) [is that] venue is proper in the District of Columbia if sufficient activities giving rise to plaintiff's cause of action took place here.") (citation omitted).

Similarly, under the general venue provision in 28 U.S.C. § 1391, "venue should be accepted 'if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance.'" *Williams v. United States*, 932 F. Supp. 357, 363 (D.D.C. 1996) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 n.62 (D.C.Cir. 1978)). And D.C. courts have repeatedly found that § 1391(b)(2)'s (the general venue statute) language regarding "a substantial part of the events or omissions giving rise to the claim. . . should be read equivalently" to § 1402(b)'s "act or omission" language. *Id.* at 363 (citations omitted); *accord Franz,* 591 F. Supp. at 378 (the FTCA's "venue requirements have been interpreted in accordance with the venue requirements of section 1391(b)"); *see also Lamont v. Haig*, 590 F.2d 1124, 1134 (1978); *Thornwell v. United States*, 471 F.Supp. 344, 356-57 (D.D.C. 1979) (applying *Lamont's* § 1391(b) reasoning to § 1402(b) and finding the two provisions' venue requirements to be equivalent).[3]

The propriety of the chosen forum is "ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Lamont*, 590 F.2d at 1134. While "[m]ere involvement on the part of federal agencies, or some federal officials who are located in Washington[,] D.C., is not

---

[3] Notably, the pre-1990 version of § 1391(b) that these courts construed and found equivalent to § 1402(b) provided for venue in "the judicial district. . . in which the claim arose." *See Lamont,* 590 F.2d at 1132 & n.49. While that language, much like the language of § 1402(b), may superficially appear to limit venue to a single district, the D.C. Circuit rejected such a reading. *Id.* at 1134. Instead, the court held that the propriety of the chosen forum is "ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Lamont*, 590 F.2d at 1134. Section 1402(b) is governed by the same construction.

determinative of venue," *Shawnee Tribe v. United States,* 298 F.Supp.2d 21, 25–26 (D.D.C. 2002), an FTCA claim satisfies § 1402(b) by specifically "complaining of acts or omissions within the jurisdiction of District Court for the District of Columbia" that were committed by federal officials. *Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1985).

Moreover, where the suit is "a single cause of action with separate grounds for relief" seeking relief for "an essentially single wrong," and there is venue over one cause of action, then "venue under Sec. 1402(b) is satisfied for the entire case." *Id*. at 101. Where venue is proper for one claim, the doctrine of pendent venue permits a court to hear other claims arising out of the same nucleus of operative fact. *Id*. Accordingly where, as here, a plaintiff pleads several causes of action under the FTCA stemming from the same common nucleus of operative fact, venue is proper so long as FTCA venue requirements are satisfied "by the remainder of plaintiffs' claims in [] [an] FTCA case." *Id.* at 103 n. 82; *Sierra Club*, 623 F. Supp. 2d at 37 ("Pursuant to pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued and the interests of judicial economy are furthered by hearing the claims together.").

In conducting this venue analysis, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). The party opposing venue "must present facts that will defeat the plaintiff's assertion of venue," *Khalil v. L-3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 135 (D.D.C. 2009) (quoting *James v. Verizon Servs. Corp.*, 639 F.Supp.2d 9, 11 (D.D.C.2009)),, with "sufficient specificity to put the plaintiff on notice of the defect," *Fam v. Bank of America NA (USA)*, 236 F. Supp. 3d 397, 405 (D.D.C. 2017) (quoting 14D Charles Alan

6

Wright et al., *Federal Practice and Procedure* § 3826, at 496 (4th ed. 2013)). As noted above, Plaintiff should be accorded the opportunity to take limited discovery in order to obtain evidence relevant to disputed facts.[4]

Ultimately, "[t]he decision whether to dismiss or transfer 'in the interest of justice' is committed to the discretion of the District court." *Id.* at 408 (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983)).

## III.   VENUE FACTS

Plaintiff has pled sufficient concrete, specific actions by federal officials in D.C. to support venue. These acts were not passive, isolated, perfunctory, or pro forma; rather, they were the authorizing, directing, controlling, and necessary operative steps of a single, centralized scheme conceived and directed from D.C. to violate the due process rights of Venezuelan nationals and remove them from the United States and the reach of courts. Compl. ¶¶ 15-17, 19, 137-38. The D.C. officials intended this centralized scheme to have nationwide effects: they aimed "to systematically deny [] [Venezuelans] due process and judicial review," and to "punish the entire population of Venezuelans currently pursuing immigration in the United States. . . [] [while] deter[ring] other non-citizens from pursuing legitimate immigration claims in the United States." Compl. ¶¶ 13, 16, 17.

---

[4] If the Court finds that the case has been filed "in the wrong division or district," it shall "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Congress enacted § 1406(a) to avoid the "injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962). Consistent with that purpose, "the interest of justice [generally] requires transferring [] cases to the appropriate judicial district rather than dismissing them." *Gill*, 415 F. Supp. 3d at 142 (citation omitted).

As set forth in the Complaint, senior federal officials, including President Donald Trump, former DHS Secretary Kristi Noem, Secretary of State Marco Rubio, and White House Adviser Stephen Miller, first cultivated a climate of hostility toward Venezuelan nationals through sustained public vilification, Compl. ¶¶ 28–38; then issued executive orders designating Venezuelan organizations as terrorist groups and expanding expedited removal in violation of due process, Compl. ¶¶ 44–46; and then, Secretary Noem revoked Temporary Protected Status for hundreds of thousands of Venezuelans, Compl. ¶ 47, while Secretary Rubio brokered an agreement to imprison them unlawfully at CECOT, Compl. ¶ 52. The President then invoked the AEA through a Proclamation signed and issued in D.C. on March 14, 2025, Compl. ¶¶ 13, 15, 19, 59, which immediately triggered implementation of then-Attorney General Pam Bondi written implementing guidance in D.C., Compl. ¶¶ 19, 61 & Ex. C. Senior DOJ officials also met in D.C. on that same date to plan the Proclamation's implementation, where they were advised of a strategy to defy any court order enjoining the removals. Compl. ¶¶ 18, 19, 89–91. At that D.C.-based meeting, then-Principal Assistant Deputy Attorney General Emil Bove directed that the flights "needed to take off no matter what." Compl. ¶¶ 18, 91, 97. Once the Proclamation leaked, White House Deputy Chief of Staff for Policy Stephen Miller, located in D.C., orchestrated a "mad scramble" to get the GlobalX planes airborne. Compl. ¶ 102. After this Court orally enjoined the removals and ordered the return of any planes in the air, Mr. Bove, located in D.C., advised that the agency proceed in violation of that order; Secretary Noem, also located in D.C., directed that flights continue to El Salvador; and Deputy Assistant Attorney General of the Office of Immigration Litigation Drew Ensign appears to have intentionally misled this Court about plans for AEA removal flights within "the next 24 or 48 hours." Compl. ¶¶ 19, 97, 104. The proximate cause of Plaintiff's wrongful removal and resulting injuries was, thus, the "specifically unlawful

8

directives of Mr. Miller, Secretary Noem, Mr. Bove[,] and Mr. Ensign . . . at DHS, DOJ[,] and the State Department." Compl. ¶ 110. All of these acts occurred in D.C. Compl. ¶¶ 19, 137. Further, federal officials in D.C. negligently directed and supervised the detention-and-removal decisions throughout the period Plaintiff was in government custody. Compl. ¶¶ 19, 144. Each step was a component of a single coordinated wrong inflicted nationwide.

## IV.    ARGUMENT

Venue lies in D.C. under the controlling "sufficient acts" standard in this Circuit. *See Gill* 415 F. Supp. 3d at 142. The Government's contrary position relies on an overstated "effects test" that the D.C. Circuit expressly declined to adopt in *Reuber* and that, in any event, supports venue in D.C., given the facts alleged in the Complaint.

### A.    Sufficient Acts Occurred in D.C. To Maintain Venue.

As described *supra*, Section III, Plaintiff alleges numerous discrete acts committed by specific high-ranking federal officials in D.C., as part of a scheme to punish and demonize Venezuelan nationals nationwide. As explained below, those acts themselves were tortious. Without those tortious, D.C.-based acts, Plaintiff would never have suffered an injury.

Again, "[t]he prevailing interpretation of section 1402(b) [is that] venue is proper in D.C. if sufficient activities giving rise to plaintiff's cause of action took place here." *Gill*, 415 F. Supp. 3d at 142 (quoting *Patel*, 933 F. Supp. 2d at 165). In other words, for § 1402(b) purposes, courts will "confer[] venue in a district where a substantial portion of the act or omissions giving rise to the actions occurred, notwithstanding that venue might also lie in other districts." *Lamont*, 590 F.2d at 1134.

The Complaint readily meets this sufficiency standard. Plaintiff's allegations of D.C.-based conduct are numerous, detailed, plausible, and substantial. *See, e.g.*, Compl. ¶¶ 15, 18, 19, 59, 61,

91, 104, 110. For one concrete example, Plaintiff's claim for intentional infliction of emotional distress ("IIED") against D.C. officials is a discrete, identifiable tort for which the operative conduct occurred in D.C. Compl. ¶¶ 147–149. Specifically, under D.C. law, a plaintiff claiming IIED must show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (citations omitted). Each element is satisfied here by conduct that occurred in D.C.

The decision by D.C.-based officials to single out a class of people based on their national origin, designate them as "Alien Enemies," and deny them due process while contemporaneously brokering an agreement to confine them in a foreign prison that the United States' own State Department had described as "harsh and life threatening" is extreme and outrageous conduct. Compl. ¶¶ 16, 47–48, 52, 59, 61–62, 137–138; *see generally* Section III, *supra*. That conduct was also intentional: federal officials "intentionally directed and implemented an unconstitutional immigration scheme" that was "intended to accomplish this goal by punishing Plaintiff and other Venezuelans" in order to deter other non-citizens from pursuing lawful immigration. Compl. ¶¶ 17, 149; *see also id.* ¶¶ 115, 130–131. And that same conduct caused Plaintiff severe and lasting emotional distress. Compl. ¶¶ 126–129, 149. Critically, the extreme, outrageous, and intentional conduct giving rise to that claim was nationwide in design and effect, applicable to Venezuelan nationals wherever they were located, and not specifically aimed at or isolated to persons in Texas or in any other particular State. Compl. ¶¶ 13, 16, 17; *cf. Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979) (holding that venue to challenge constitutionality of an Idaho statute could not be sustained in Texas merely because the statute "had its impact" on the Plaintiff in Texas in part because such "reasoning would subject the Idaho officials to suit in almost every district in the

country," and instead finding that venue lay where the challenged official action was taken and where "the bulk of the relevant evidence and witnesses" were located). The acts and omissions giving rise to the IIED claim therefore "occurred" in the District of Columbia for purposes of § 1402(b).

Plaintiff's negligence claim similarly meets the sufficiency standard. Under D.C. law, a plaintiff claiming negligence must show "(1) the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011); *see* Compl. ¶ 143. Federal officials owed Plaintiff a duty of ordinary care in directing and supervising his detention and removal for the entire time he was in U.S. government custody. Compl. ¶ 144. They breached that duty through the directives described above, including Mr. Bove's instruction that the flights "take off no matter what," his subsequent advice that the agency proceed in violation of this Court's order, and Secretary Noem's directive that the flights proceed. Compl. ¶¶ 19, 91, 104, 144. Each of these directives was given by the named officials in Washington, D.C. *Id.* And those breaches proximately caused Plaintiff's wrongful removal and resulting injuries. Compl. ¶¶ 110, 144–145,149. The operative acts underlying the negligence claim thus likewise occurred in D.C.

Indeed, federal courts have found that concrete, specific acts by federal officials in D.C. support venue in D.C. even when the resulting injury occurs elsewhere. *Franz,* 591 F. Supp. at 378. In *Franz,* the plaintiff's injury arose from the placement of his children into the Witness Protection Program, and his resulting inability to contact them. *Id.* However, the decisions effectuating that separation were made by Justice Department officials in D.C. *Id.* Rejecting a challenge to venue under § 1402(b), the court held that those D.C.-based decisions supported venue

under § 1402(b), notwithstanding that the plaintiff felt their effects elsewhere, because Justice Department officials in D.C. "retained overall responsibility for the administration of" the program and "the role of the Department of Justice in the sum total of events which resulted in this lawsuit was not insubstantial." *Id.* (noting "only an extremely narrow interpretation of § 1402(b) would preclude venue in the District of Columbia"). In other words, the "act or omission complained of" occurs where it is performed rather than simply where its effects are felt, particularly when the effects are diffuse and the defendant did not intend them to occur in a particular location.

Conversely, venue fails when a plaintiff cannot point to operative conduct in the relevant district. The present case is completely unlike those FTCA cases wherein the complained-of conduct occurred outside of D.C. and the Plaintiff relied on vague allegations tied to officials in D.C. to establish venue. For instance, in *Void-El v. O'Brien*, 811 F. Supp. 2d 255, 260 (D.D.C. 2011) (Boasberg, J.), this Court found improper venue for FTCA claims in a case where "Plaintiff's allegations [] relate[d] to events—namely, the alleged miscalculation of his sentence—that he believes took place . . . in Grand Prairie, Texas. *In other words, there is no allegation that any calculation of his prison sentence took place in D.C.*" *Id*. (emphasis added). Put simply, if the plaintiff had in fact alleged that just such calculation had taken place in D.C. or that D.C. officials directed the miscalculation, venue may have been proper. Here, in contrast, critical actions that resulted in Plaintiff's injuries were taken by the Defendant in this District. Thus, under *Void-El,* venue is proper here because Plaintiff has alleged liability-generating conduct that occurred in D.C.

Taking Plaintiff's factual allegations as true, as required, the Complaint pleads more than the "[m]ere involvement on the part of. . . some federal officials who are located in Washington D.C." *Gill,* 415 F. Supp. 3d at 142. Moreover, it is not merely that Plaintiff alleges sufficient

12

specific acts within D.C., but also that the conduct alleged here in D.C. was itself tortious and the proximate cause of the injuries he suffered. If not for the Administration's centralized, unified scheme to punish and demonize Venezuelan nationals nationwide, coupled with its deliberate actions to avoid the constraints of constitutional due process and existing immigration law, Plaintiff would not have been subjected to the injuries alleged. And Plaintiff does not simply vaguely attribute his allegations to the Trump Administration; he instead alleges specific and significant acts by named federal officials in D.C. *See In re Sofaer*, 728 A.2d 625, 643 (D.C. 1999) (interpreting substantial participation to mean "that the [actor's] involvement must be of significance to the matter.") (quoting 5 C.F.R. § 2637.201(d)(1)). There is a key distinction between officials conducting passive administrative decision-making from D.C. and officials who, in D.C., actively conceive of and then direct the conduct that injures a plaintiff.

In fact, the Supreme Court recently distinguished passive knowledge from active design in secondary copyright liability, providing an analogous framework for distinguishing between passive and active involvement here. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ___, ___, 146 S.Ct. 959 (2026). In *Cox*, the Court held that "merely providing a service. . .with knowledge that it will be used by some to infringe" is insufficient to attach liability. *Id*. at 964. Conversely, where the party takes "affirmative[]" steps to "induce[] the infringement" or the "provided service is tailored to" such unlawful use, then liability attaches. *Id*. at 967. The Court's analysis is helpful here. While passive presence of a higher-ranking government official in D.C. is not an act or omission for § 1402(b) purposes, conception, authorization, and affirmative direction of the complained-of conduct from D.C. *does* constitute an operative act. Again, Plaintiff alleges the latter: specific federal officials were the architects of the Proclamation and of its unlawful implementation, as well as the driving forces behind the defiance of this Court's order, which

13

deprived Plaintiff of due process and were the proximate cause of his injuries. Such methodical planning and implementation of a plan is the antithesis of "mere involvement." Plaintiff has thus alleged precisely the active, operative conduct in D.C. that § 1402(b) requires. And, as explained below, the remaining authorities invoked by Defendant fail to articulate a principle that would apply to Plaintiff's allegations and make venue in D.C. improper. *See infra* Section IV.C.

**B.  Venue Over One Claim Supports Venue Over The Entire Case.**

As set forth above, Plaintiff's four FTCA counts arise from a single, centralized scheme conceived, authorized, and directed from D.C. *See supra* Section III. Where claims arise from one coordinated course of conduct, venue over one such claim supports venue over all of them.

Indeed, the D.C. Circuit confronted a factual pattern closely analogous to what transpired here in *Beattie*. There, plaintiffs sued the United States under the FTCA after a fatal plane crash in Antarctica, pleading two counts: negligence by air-traffic controllers in Antarctica; and negligent selection, training, and supervision of those controllers by Department of Defense ("DOD") officials in Washington, D.C. *Beattie*, 756 F.2d at 94, 100. The Government argued that venue was improper in D.C. because the plaintiffs' claims did not "arise" in D.C. but in Antarctica, and insufficient operative acts occurred in D.C. *See id.* at 93. The court rejected those arguments, finding that allegations of negligent conduct at DOD "headquarters" satisfied the requisite "acts or omissions" venue requirement. *Id.* at 100. Moreover, because the *Beattie* plaintiffs sought relief for what was "an essentially single wrong," albeit through two different claims (which could also be characterized as "a single cause of action with separate grounds for relief"), the court held that venue was "satisfied for the entire case by virtue of the headquarters claims." *Id.* (quoting in part *Hurn v. Oursler*, 289 U.S. 238, 246 (1933)). And even if plaintiffs' claims were considered to be separate, the court found it proper to rely on theories of "pendent venue . . . to satisfy venue

requirements for a portion of plaintiffs' FTCA claims, based on the satisfaction of venue requirements by the remainder of plaintiffs' claims in this FTCA case." *Id.* at 103 n.82.

The *Beattie* Court went on to explain that policy considerations of "judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants" provided further support for D.C. venue for both claims, given the common nucleus of operative facts. *Id.* at 103. The plaintiffs' claims were "very similar as to the proof," with "great commonality as to witnesses and evidence." *Id.* at 101. Ultimately, "the District of Columbia might well be the most convenient forum, since many of the witnesses will be either here in Washington, D.C. or scattered around the globe," and relevant records were clearly located in D.C. *Id.* at 104.

Here, too, Plaintiff's Counts I and II (for negligence and IIED) focus directly on the conduct of specific federal officials acting from D.C. And while the abuse of process and false-imprisonment counts are pled directly against law-enforcement officers who executed Plaintiff's removal, those counts turn on whether the officers' actions were lawfully authorized and directed by D.C.-based actions, including the Proclamation, the guidance, and the directives to defy this Court's order. The bulk of relevant witnesses and documents are thus located in D.C. Accordingly, Plaintiff's "pendent and principal claims arise out of a common nucleus of operative facts; . . . present common issues of proof; [and] . . . involve the same witnesses," making pendent venue proper. *Reuber,* 750 F.2d at 1048 (quoting *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515, 529 (8th Cir. 1973)).

## C. The Government's Overstated Effects Test is Inapplicable and Misreads *Reuber.*

### i. The D.C. Circuit focuses on acts or omissions, not merely effects.

Because the Defendant cannot dispute that sufficient acts occurred in D.C., its Motion primarily relies on an overstated "effects test" that is inapplicable here. Specifically, the Motion contends that because "the operative acts or omissions underpinning Plaintiff's claims for relief

15

occurred in Texas," and because any acts in D.C. had their "intended effects in Texas," venue is only proper there. Mot. at 2, 6-7.

Contrary to Defendant's submission, however, in *Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1985), the D.C. Circuit expressly declined to adopt the standard they rely upon: "when an individual's conduct occurs in one district but has intended effects elsewhere, the act 'occurs' in the jurisdiction where its effects are directed." *Id.,* at 1047. That language in *Reuber* describes a standard applied in a different case, *Forest v. United States*, 539 F. Supp. 171 (D. Mont. 1982). The *Reuber* court then went on to explain:

> [*Forest*] involved a radio transmission directed specifically to the pilot in Montana, the situs of the "act" could thus be reasonably perceived as including the place at which it was targeted and where the foreseeable harm would occur. So viewed, *Forest* stands only for the proposition that, when an individual's conduct occurs in one district but has intended effects elsewhere, the act "occurs" in the jurisdiction where its effects are directed. . . . Unfortunately for Reuber, the Supreme Court has already rejected a reading of the place where "the act or omission occurred" as including any place where the conduct causes injury. . . . *We thus decline Reuber's invitation to adopt and expand <u>Forest</u>'s rationale*.

*Reuber*, 750 F.2d at 1047 (emphasis added).

The D.C. Circuit's decision in *Reuber*, and the Supreme Court precedent it relies on, *Richards v. United States*, 369 U.S. 1 (1962), clearly reject the extreme version of the "effects test" advanced by the Defendant. In *Reuber*, the plaintiff sued in D.C., despite the fact that the government officials who initiated the action against him—the issuance of a letter of reprimand— worked and took the actions in Maryland. *Id*. at 1046. The plaintiff argued he was injured in the District where the letter was leaked, published, and posted. The D.C. Circuit concluded that "the Supreme Court has already rejected a reading of the place where 'the act or omission occurred' as including any place where the conduct causes injury." *Id* at 1047 (quoting *Richards*). Citing *Forest* but refusing to extend its holding, the Court instead held that only when government officials act

16

in one district in a manner "directed specifically" at an actor in another district does the act "occur[]" in the jurisdiction where its effects are directed." *Id*.

The court in *Reuber* thus rejected venue on a *different* basis than what the Defendant claims in its Motion, a basis that makes clear venue is appropriate here—specifically, that the plaintiff "c[ould] point to no act in D.C. by any government employee that caused him any tortious injury." *Reuber*, 750 F.2d at 1047. Here, Plaintiff identifies a series of discrete acts causing him injury taken by specific government employees in D.C., including the issuance of the Proclamation and implementing guidance, and the directive to continue removal flights in defiance of this Court's order. Compl. ¶¶ 15, 19, 59, 61, 91, 104, 110, 137.

The distinction that *Reuber* drew between itself and *Forest* is also key to the venue analysis. *Forest* analyzed the FTCA venue statute in a situation where air traffic controllers in Utah sent instructions that resulted in a plane crash in Montana. The *Forest* Court determined that Montana was the only proper venue in part because the "act or omission" occurred in Montana. *Id.* The D.C. Circuit distinguished the facts of *Reuber* from those of *Forest*, noting that the latter "involved a radio transmission directed specifically to the pilot in Montana, [and thus] the situs of the 'act' could [] be reasonably perceived as including the place at which it was targeted and where the foreseeable harm would occur." *Reuber,* 750 F.2d at 1047. Thus, the court reasoned that "*Forest* stands only for the proposition that, when an individual's conduct occurs in one district but has intended effects elsewhere, the act 'occurs' in the jurisdiction where its effects are directed." *Id.* The "effects test," in other words, dictates venue in the place of injury only when the conduct is aimed at an identifiable place or target so that the situs of the effect is discrete and ascertainable.

The D.C. Circuit declined to extend that test any further, observing that the Supreme Court had "already rejected a reading of the place where 'the act or omission occurred' as including any

17

place where the conduct causes injury." *Id.* (quoting *Richards v. United States*, 369 U.S. 1 (1962)). Although *Richards* construed § 1346(b)'s choice-of-law language rather than § 1402(b)'s venue language, both provisions turn on the phrase, the place "where the act or omission. . . occurred," *Compare* 28 U.S.C. § 1346(b)(1) *with id.* § 1402(b), and "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (citations omitted). The court in *Reuber* accordingly applied *Richards'* act-focused construction of that phrase to the venue question and made clear that the FTCA's focus is on the situs of the government employee's tortious act, rather than the place of the injury. The court "thus decline[d] Reuber's invitation to adopt and expand *Forest*'s rationale," holding instead that "Reuber ha[d] not alleged an act in D.C. which makes venue over his FTCA claim proper." *Reuber*, 750 F.2d at 1047.

The act-focused principle in *Richards* animates this Circuit's FTCA cases. As the D.C. Circuit observed in *Sami v. United States*, the "entire scheme of the FTCA focuses on the place where the negligent or wrongful act or omission of the government employee occurred." 617 F.2d 755, 761 (D.C. Cir. 1979) (citing *Richards*, 369 U.S. at 9–10), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).

In *Sosa v. Alvarez-Machain*, the Supreme Court found the "the act or omission" language in certain sections of the FTCA, including the venue provision, significant in distinguishing the Act's foreign country exception, whereby immunity is not waived for torts "arising in a foreign country," 28 U.S.C. § 2680(k). Specifically, in concluding that "arising in" referred to the place of injury rather than a defendants' acts or omissions, the Court noted that it was "difficult to reconcile" a different conclusion with the fact that Congress chose to write "arising in" for the foreign country exception "with the fact that two of the Act's other exceptions specifically

18

reference an "act or omission." *Id.* at 711, n.9. Thus it was "clear that Congress knew how to specify 'act or omission' when it wanted to," and any argument to the contrary "runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Id.* (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:06, at 194 (6th rev. ed. 2000)). The Court "therefore h[e]ld that the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred," *id.* at 712, but expressly distinguished the FTCA's venue provision based on its distinct language.

The clear implication of *Reuber*, *Richards,* and *Sosa* is that the language in the venue section of the FTCA permits venue in jurisdictions other than where the injury occurred.

### ii. Even the Government's overstated effects test permits venue in D.C. under the facts alleged here.

The cases the Government relies on to advance its overstated "effects test" divide along two lines, and Plaintiff's allegations fall outside of both. The first line of cases applies the "effects test" in limited contexts akin to those in *Forest* where the challenged conduct was directed at a specific out-of-district target. *See, e.g., Attkisson v. Holder*, 241 F. Supp. 3d 207, 213 (D.D.C. 2017) (surveillance "directed at the Attkissons' home in Virginia"). In *Patel,* for example, a federal prisoner contended that venue lay in D.C. for his FTCA claims because Bureau of Prisons ("BOP") headquarters officials had ordered his transfer to a facility that subsequently failed to provide adequate medical care. 933 F. Supp. 2d at 164–65. The court found venue improper because, even assuming the transfer decision was made at headquarters, the decision targeted a single inmate, and its effects were only felt at one facility outside of D.C. *Id.* at 165. Thus, the only alleged tortious conduct relevant to venue was the provision of inadequate medical care at the out-of-district facility.

19

A separate line of cases denies D.C. venue because the plaintiff did not plead any operative acts within D.C. at all. *See, e.g., Gill*, 415 F. Supp. 3d at 142. In *Sanchez-Mercedes,* for instance, an inmate's FTCA claim arose during his incarceration outside of D.C. after the confiscation of his cane and subsequent denial of medical care. *Sanchez-Mercedes v. Bureau of Prisons,* 453 F. Supp. 3d 404, 417 (D.D.C. 2020). Because the only connective tissue to D.C. was that BOP was headquartered there, the court held that venue was not proper. *Id.* Applying the same logic, the court in *Simpson* reached a similar result when an inmate's claims arose from a disciplinary proceeding in Pennsylvania, and his only asserted basis for D.C. venue was the location of BOP's headquarters. *Simpson v. Federal Bureau of Prisons* 496 F. Supp. 2d 187, 193 (D.D.C. 2007). And in *Void-El v. O'Brien,* discussed above, this Court held venue was improper precisely because, although a "tort claim [under the FTCA] arises at the place where the alleged tortious act occurred," the plaintiff had alleged no act that "took place in the District." 811 F. Supp. 2d at 259 (D.D.C. 2011).

Neither line of cases applies here. Plaintiff does not allege conduct in D.C. targeting a specific individual in a specific state. Nor are Plaintiff's allegations premised merely upon an agency's headquarters, or limited, passive or unspecified approval by unidentified officials. As the Supreme Court explained in *Ashcroft v. Iqbal,* that distinction is essential. 556 U.S. 662, 677 (2009). There, the Court held that an official's mere "knowledge and acquiescence" in subordinates conduct is not actionable, rather, the official "is only liable for his or her own misconduct." *Id.* at 677. And while *Iqbal* addressed individual rather than FTCA liability, its distinction between an official's own conduct and mere supervisory awareness explains the venue cases: where the only D.C. connection is a higher-level official's presence or ministerial action— as in the second line of cases described above—there exists no operative "act or omission" in D.C.

20

on which venue could rest. Here, by contrast, Plaintiff has alleged a unified, intentional course of conduct carried out in D.C. through discrete, identified acts by named officials and meant to have nationwide effects.

The Proclamation alone illustrates why even Defendant's version of the "effects test" does not deprive the D.C. court of venue. As an instrument of general application directed at Venezuelans nationwide, the Proclamation had no single, identifiable geographic target. Like the diffusely disseminated letter in *Reuber,* the Proclamation has no discrete situs of "effect" to which venue could attach outside of the location where it was issued. 750 F.2d at 1047-48. Where conduct is not aimed at a single place, the "effects test" has no obvious application and the "act" occurs for venue purposes where it was performed—here, in D.C.

This principle is further reflected in the Supreme Court's recent decision in *EPA v. Calumet Shreveport Refining, L.L.C.* 605 U.S. 627 (2025). There, the Court interpreted the Clean Air Act's venue provision, and held that it channels challenges to locally applicable action into the D.C. Circuit when that action was "based on a determination of nationwide scope or effect," and that this nationwide intent was "the primary explanation for and driver of" the action. *Id.* In this situation, the Court found that the localized effects were "[m]erely peripheral." *Id.* That logic applies here, given that the primary driver of Plaintiff's injury was the nationwide scheme conceived, authorized, and directed from D.C., while the effects of that scheme in Texas and El Salvador were peripheral to where the operative conduct occurred.

A further distinction between the present case and *Forest, Patel* and the like is that those cases address ministerial conduct such as transfer or transmission rather than unlawful decision-making. Here, Plaintiff alleges both a tortious nationwide policy crafted, coordinated and directed from D.C. *and* the unlawful defiance of this Court's order. The defiance of a court's order is not

conduct directed specifically at the place where its effects are felt; rather, it is an offense against the court itself. *See United States v. Shipp*, 203 U.S. 563, 573 (1906) (willful disregard of a court's order constitutes contempt of the issuing court.). That wrong is therefore located where the Court sits, which, in this case, is D.C.

Finally, that the operative acts at issue here occurred in D.C. is confirmed by what their adjudication would require, which includes "a commonsense appraisal of the implications of [the alleged] events for accessibility to witnesses and records." *Lamont*, 590 F.2d at 1134. This appraisal points to venue in D.C. Because this case focuses squarely on the conduct of specific federal officials in D.C., the vast majority of relevant documents and percipient witnesses are located in D.C., while few  documents or witnesses are located in Texas. Plaintiff has alleged "sufficient activities giving rise to [his] [] cause of action," and  a "commonsense appraisal" of the relevant evidence makes clear that venue is proper in D.C. *Gill*, 415 F. Supp. 3d at 142.

## V.    IF IN DOUBT, THE COURT SHOULD HOLD A HEARING ON FACTUAL ISSUES RELATING TO VENUE

For the reasons set forth above, the allegations in the Complaint demonstrate that this district is a proper venue for Plaintiff's FTCA claims and that the Motion should be denied. If this Court disagrees and places weight on Defendant's refusal to accept Plaintiff's well-pled allegations as true, Plaintiff respectfully requests that, prior to deciding the Motion, this Court schedule a hearing pursuant to Fed. R. Civ. P.12(i) and permit targeted discovery into the contested, determinative venue issues. Ultimately, if this Court concludes that venue is not proper in the D.D.C., a long line of cases make clear that the proper remedy is to transfer this case to the Southern District of Texas, not to dismiss it.

22

**A.  An Evidentiary Hearing and Discovery is Appropriate Where, as Here, Defendant Disputes the Allegations of the Complaint and Where the Defendant is in Exclusive Possession of Determinative Information.**

A predetermination hearing, accompanied by focused discovery, is appropriate when key venue facts are in dispute. Fed.R. Civ. P. 12(i); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). Indeed, the D.C. Circuit has required pre-dismissal discovery in an FTCA action where the federal government sought to "shield itself from liability simply by denying the allegations of a complaint" but also exclusively controlled operative information. *Ignatiev*, 238 F.3d at 467 (D.C. Cir. 2001).

Here, the Government disputes a variety of allegations in Plaintiff's Complaint, but is in exclusive possession of the determinative evidence concerning federal officials' conduct and their intent. Thus, if this court will consider evidence outside of the pleadings in ruling on the Rule 12(b)(3) motion, Plaintiff lacks the ability without discovery to establish the sufficiency of operative acts in D.C. beyond what is available in the public record.

Indeed, Defendant raised numerous factual discrepancies in its Motion. For example, it:

- Characterizes the acts of the high-ranking officials described in the Complaint as "mere involvement" in key decisions and actions, contradicting Plaintiff's contentions that, in fact, those same officials were primary, active drivers of a centralized unlawful scheme. Mot. at 6.

- Claims that the "intended effects" of any "plan to expel Venezuelan nationals" was not nationwide in scope as contended by Plaintiff but specifically targeted at Texas. *See* Mot. at  7 (quoting in part Compl. ¶ 14).

- Misstates that Plaintiff "identifies no 'act or omission complained of'" that occurred in the District of Columbia" and gives rise to his negligence claim. Mot. at 5.

- Asserts that "Plaintiff's intentional infliction of emotional distress count arises from his arrest in Texas . . . and "abuse[] on the plane and on the tarmac, as he awaited his imprisonment in CECOT," in Texas, Mot. at 5, despite Plaintiff's contrary allegations.

Again, these operative venue facts contested by Defendant—about the breadth of tortious acts and omissions undertaken by federal officials in D.C. and about the intended effects of actions taken in D.C.—can only be resolved through obtaining documents and testimony in Defendant's exclusive possession. *Cf. Ignatiev*, 238 F.3d at 467.

It is well established that "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (collecting cases), and that courts in this Circuit apply the same standard to discovery on venue. *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 78 (D.D.C. 2022) (analyzing venue-related discovery under the jurisdictional-discovery framework). To engage in such discovery on venue issues, the plaintiff "'must have at least a good faith belief that such discovery will enable it to show that the court' has jurisdiction" through supplemental allegations. Order, *Clark v. DocuSign, Inc.*, No. 21-cv-1007, WL 16985185 at *2 (April 22, 2022) (ECF No. 20) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)). Once a plaintiff demonstrates that good faith belief, D.C. district courts have routinely granted focused discovery on venue-related facts. *See, e.g.*, *Clark*, Order at *2; *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 210 (D.D.C. 2014) (noting court's grant of venue discovery prior to deciding motions to dismiss). Moreover, other federal courts have found that jurisdictional discovery is warranted in analogous situations where a plaintiff alleges

24

plausible FTCA claims and the Government raises jurisdictional arguments in defense. *See, e.g.,* *F.C.C. v. United States*, No. 22CV5057, 2023 WL 5718440, at \*2 (E.D.N.Y. Sept. 5, 2023) (noting useful information uncovered by venue discovery in making venue determination in FTCA family separation case); *Swafford v. United States*, No. 4:12-CV-0220-HLM, 2013 WL 12207597, at \*2 (N.D. Ga. Feb. 4, 2013) (granting 90-day jurisdictional discovery in FTCA case where "the discovery process poses burdens for the Government, [but] the Court cannot find at this point that Plaintiff's FTCA claim is frivolous").

Plaintiff has already provided numerous, detailed, specific allegations of acts that occurred in Washington, D.C., establishing Plaintiff's good faith belief that further factual development will confirm these allegations. *See, e.g., supra*, Section III. Plaintiff's forthcoming motion for discovery will make a "detailed showing of what discovery [he] wishes to conduct or what results it thinks such discovery would produce," in accordance with this district's practice, *See Uni-Top Asia Inv. Ltd.*, 600 F. Supp. 3d at 78.

### B. Even If The Court Determines Venue Is Not Proper in D.C., The Interest of Justice Requires Transfer.

"Generally, the interest of justice requires transferring [] cases to the appropriate judicial district rather than dismissing them." *Gill*, 415 F. Supp. 3d at 142 (quoting *Sanchez ex rel. Rivera-Sanchez*, 600 F. Supp. 2d at 22); *see* 28 U.S.C. § 1406(a). As Defendant itself admits, the D.C. Circuit "favors" transfer. Mot. at 2, n.1 (quoting *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983)). As the D.C. Circuit has explained, transfer rather than dismissal is the best remedy whenever any "procedural obstacles"—including improper venue—would be removed by sending the case to another district for adjudication on the merits. *Sinclair*, 711 F.2d at 293–94 (quoting in part *Goldlawr, Inc.*, 369 U.S. at 466). Accordingly, transfer, rather than dismissal, is the regular practice of federal courts in response to a successful Rule 12(b)(3) motion. *See, e.g.,*

25

*Astakhov v. United States Citizenship & Immigration Servs.*, 698 F. Supp. 3d 135, 147 (D.D.C. 2023); *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 22 (D.D.C. 2009); *Jones v. Food & Drug Admin.*, No. 24-1223-SLS, 2025 WL 2709769, at *3 (D.D.C. Sept. 23, 2025); *Williams v. Lutnick*, No. 24-1492-SLS, 2025 WL 1293349, at *3 (D.D.C. May 5, 2025).

There is no dispute that this case could have been brought in the Southern District of Texas, which is where Plaintiff was located during the relevant time period of March 14 to March 15, 2025. *See Hoffman v. Fairfax Cnty. Redevelopment & Hous. Auth.*, 276 F. Supp. 2d 14, 19 (D.D.C. 2003) ("While the D.C. Circuit does not appear to have addressed the meaning of the phrase 'in which an action could have been brought,' the phrase has been interpreted to mean that the transferee court must have both personal jurisdiction and venue."); *see also* Mot. at 3 & n.3. Accordingly, if this Court determines that venue is not proper in D.C., Plaintiff respectfully requests that this case be transferred to the Southern District of Texas rather than dismissed. 28 U.S.C. § 1406(a).

## VI.    CONCLUSION

For the reasons set forth above, this Court should deny Defendant's Motion. In the alternative, Plaintiff respectfully requests a hearing pursuant to Fed. R. Civ. P. 12(i), accompanied by targeted jurisdictional discovery. Ultimately, if this Court concludes that venue is not proper in the D.D.C., the Court should transfer this case rather than dismiss it.

Dated: June 15, 2026                          Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen (D.C. #435051)
Stephen A. Jonas (D.C. #90037069)
Joshua G. Kolb (#NY0628)
**Democracy Defenders Fund**
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003

26

Tel: (202) 594-9958
norman@democracydefenders.org
steve@democracydefenders.org
joshua@democracydefenders.org

-and-

Mimi Marziani*
Texas Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens*
Texas Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez*
Texas Bar No. 24109935
jgonzalez@msgpllc.com
Andrew Silberstein*
New York Bar No. 5877998
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

*Admitted Pro hac Vice*

**ATTORNEYS FOR PLAINTIFF**

27

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record pursuant to the Court's

CM/ECF system on June 15, 2026.

/s/ Norman L. Eisen
Norman L. Eisen (D.C. #435051)
Stephen A. Jonas (D.C. #90037069)
Joshua G. Kolb (#NY0628)
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@democracydefenders.org
steve@democracydefenders.org
joshua@democracydefenders.org

-and-

Mimi Marziani*
Texas Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens*
Texas Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez*
Texas Bar No. 24109935
jgonzalez@msgpllc.com
Andrew Silberstein*
New York Bar No. 5877998
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

*Admitted Pro hac Vice*

**ATTORNEYS FOR PLAINTIFF**

28