**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NEIYERVER ADRIÁN LEON RENGEL

Plaintiff,

v.

UNITED STATES OF AMERICA

Defendant.

Case No.  1:26-cv-01008

**PLAINTIFF'S MOTION FOR HEARING ON VENUE AND
REQUEST TO PERMIT TARGETED VENUE DISCOVERY**

Pursuant to F.R.C.P. 12(i) and F.R.C.P. 7(b), Plaintiff Neiyerver Adrián Leon Rengel respectfully requests that this Court permit targeted discovery into key venue-related factual issues that Defendant has contested in its Motion to Dismiss ("Motion"), ECF No. 19, and hold a hearing prior to deciding Defendant's Motion. Plaintiff incorporates herein the factual allegations in his Complaint, ECF No. 5-1, as well as the legal arguments in his Response to the Motion to Dismiss ("Response"), ECF No. 21. Pursuant to Local Civil Rule 7(m), counsel for Plaintiff conferred with counsel for Defendant regarding the relief sought in this motion. Counsel for Defendant advised that Defendant opposes the motion.

**ARGUMENT**

Although Defendant superficially claims that it "accepts Plaintiff's non-conclusory factual allegations in his Complaint as true," Mot. at 2, it later denies many allegations or mischaracterizes them in such a way as to dispute core facts supporting venue in this District. Venue discovery is appropriate when "additional factual development would be useful" to resolving a motion to dismiss for improper venue. Order, *Clark v. DocuSign, Inc.*, No. 21-cv-1007, at 2 (D.D.C. April 22, 2022) (ECF No. 20) (quoting *RegenLab USA LLC v. Estar Techs.* Ltd., 16-cv-8771, Op. &

1

Order at 6, Dkt. 102). Here, Plaintiff demonstrates a "good faith basis to believe" that venue discovery would yield additional evidence that "will enable [him] to show that the court" is a proper venue. *Id.* (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)).

## I.    Rule 12(i) and the Law of this Circuit Strongly Supports Discovery and Further Argument Prior to Dismissal.

Upon a Rule 12(i) motion, the court must allow any Rule 12 defenses to "be heard and decided before trial unless the court orders a deferral." F.R.C.P. 12(i). Thus, "[a] district court cannot dismiss a complaint on the basis of a Rule 12(b) defense or objection without giving the plaintiff an opportunity to be heard; a dismissal without that opportunity has been properly characterized as a denial of due process." Wright & Miller, Preliminary Hearings, 5C Fed. Prac. & Proc. Civ. § 1373 (3d ed.). Rule 12(i) further contemplates that disputed evidentiary matters might require resolution prior to any Rule 12 hearing and decision. *See id.* (noting that, in conjunction with a Rule 12(i) hearing, a district court may consider affidavits, documents and/or oral testimony and citing cases). Indeed, Defendant itself concedes that when a venue challenge raises "pertinent factual disputes to resolve," it is no longer a "pure question of law." Mot. at 4 (quoting *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13 (1978). Though venue is not jurisdictional, motions for venue discovery are subject to the same legal standards that apply to motions for jurisdictional discovery, and courts speak of the two interchangeably. *See, e.g.*, Order, *Clark*, No. 21-cv-1007, at 2 (ECF No. 20); *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 78 (D.D.C. 2022), *dismissed on other grounds* No. 22-7077, 2022 WL 19975278 (D.C. Cir. Nov. 29, 2022). And as

a general matter, "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (collecting cases). Under that standard, discovery is warranted where the movant shows it can supplement its allegations through discovery. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified") (citing *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987)).

Specifically, venue discovery is appropriate when a plaintiff "has a good faith basis to believe that discovery regarding [the proposed] topics will yield facts relevant to the venue determination." Order, *Clark v. DocuSign, Inc.*, No. 21-cv-1007, at 3 (D.D.C. April 22, 2022) (ECF No. 20). The plaintiff must only "reasonably demonstrate[] that it can supplement its [venue] allegations through discovery." *Id.* at 2 (quoting *Nu Image, Inc. v. Does 1-23*, 322, 799 F. Supp. 2d 34, 37 (D.D.C. 2011). When a party makes this showing, D.C. district courts have granted discovery on venue-related facts. *See, e.g.*, *id. at 2*; *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 210 (D.D.C. 2014) (noting court's grant of venue discovery prior to deciding motions to dismiss). In particular, courts have found that venue discovery is warranted in analogous situations where a plaintiff alleges plausible FTCA claims and the federal government disputes where the operative acts or omissions occurred. Indeed, the D.C. Circuit has ***required*** pre-dismissal discovery in an FTCA action where the federal government sought to "shield itself from liability simply by denying the allegations of a complaint" but also exclusively controlled operative information. *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("The district court erred in not allowing discovery . . . prior to dismissing for lack of subject matter jurisdiction.").

More recently, in *F.C.C. v. United States*, an E.D.N.Y federal court granted leave "to conduct limited discovery on the issue of venue, focused primarily on whether any decisions by Government officials to separate Plaintiffs and/or continue A.C.L.'s custodial placement (the 'acts' and 'omissions' alleged by Plaintiffs) were made by officials in the Eastern District of New York." No. 22CV5057NRMJMW, 2023 WL 5718440, at *2 (E.D.N.Y. Sept. 5, 2023). After that discovery, the court approved transfer of the case to Washington D.C. because the family separation policy at issue "was adopted by former executive branch officials in Washington, D.C. and in venue-related discovery, Plaintiffs obtained documentation confirming that the decision to separate [the plaintiff] was specifically authorized by ORR's then-Director, whose office is in Washington, D.C." *Id.* (internal citations omitted); *see also Swafford v. United States*, No. 4:12-CV-0220-HLM, 2013 WL 12207597, at *2 (N.D. Ga. Feb. 4, 2013) (granting 90-day jurisdictional discovery in FTCA case where "the discovery process poses burdens for the Government, [but] the Court cannot find at this point that Plaintiff's FTCA claim is frivolous").

Plaintiff's detailed Complaint and extensive Response underscore his good faith belief that D.C. is a proper venue and that further factual development will confirm the specific venue allegations offered therein. Furthermore, here, as in the D.C. Circuit's decision in *Ignatiev*, Defendant contests key factual allegations in Plaintiff's Complaint, but fails to itself proffer any evidence that would defeat venue, even though the United States exclusively controls all of the determinative information. This posture further supports granting discovery, because Defendant "cannot shield itself from liability simply by denying the allegations of a complaint." *Ignatiev*, 238 F.3d at 467.

Indeed, Defendant raised numerous factual discrepancies in its Motion. For example, it:

- Characterizes the acts of the high-ranking officials described in the Complaint as "mere involvement" in key decisions and actions, contradicting Plaintiff's contentions that, in fact, those same officials were primary, active drivers of a centralized unlawful scheme. Mot. at 6.

- Claims that the "intended effects" of any "plan to expel Venezuelan nationals" was not nationwide in scope as contended by Plaintiff but specifically targeted at Texas. *See* Mot. at 7 (quoting in part Compl. ¶ 14).

- Misstates that Plaintiff "identifies no 'act or omission complained of' that occurred in the District of Columbia" and gives rise to his negligence claim. Mot. at 5.[1]

- Asserts that "Plaintiff's intentional infliction of emotional distress count arises from his arrest in Texas . . . and abuse[] on the plane and on the tarmac, as he awaited his imprisonment in CECOT," in Texas, Mot. at 5, despite Plaintiff's contrary allegations.[2]

If Defendant insists on contesting these operative venue facts—about the breadth of tortious acts and omissions undertaken by federal officials in D.C. and about the intended effects of actions taken in D.C.—the conflict with Plaintiff's good faith pleadings can only be resolved through obtaining documents and testimony in Defendant's exclusive possession. *Cf. Ignatiev*, 238 F.3d at 467.

---

[1] Plaintiff specifically pleaded that federal officials in D.C. "created an unreasonable and foreseeable risk that, in the absence of procedural safeguards and normal processes, Plaintiff would be wrongfully detained, removed, and exposed to dangerous conditions of confinement," and further "breached their duty by directing Plaintiff's unlawful removal and continued detention to a known high-risk environment." Compl. ¶ 144.

[2] Plaintiff specifically alleges that the decision by D.C.-based officials to single out a class of people based on their national origin, to designate them "Alien Enemies" and deny them any due process while contemporaneously brokering an agreement to confine them in a foreign prison that the United States' own State Department had described as "harsh and life threatening" is extreme and outrageous conduct. Compl. ¶¶ 16, 47–48, 52, 59, 61–62, 137–138.

**II.    Plaintiff Seeks Good Faith Discovery to Resolve Venue-Related Factual Questions.**

D.C. district courts require a party moving for jurisdiction discovery to make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Uni-Top Asia Inv. Ltd.*, 600 F. Supp. 3d at 78 (D.D.C. 2022) (internal quotation marks and citation omitted); *see also Clark*, Order at 2. Here, discovery would probe contested factual questions that go directly to venue, such as:

- Did "sufficient activities" giving rise to Plaintiff's claims occur in D.C., thereby establishing venue under § 1402(b)? *See Gill v. United States*, 415 F. Supp. 3d 127, 142 (D.D.C. 2019) (quoting *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013) (Boasberg, J.)? Specifically, what discrete acts were taken by federal officials in D.C. to abuse procedural safeguards and disregard normal immigration law procedures in the hasty implementation of the Alien Enemies Act Proclamation? What discrete acts were taken by federal officials in D.C. to drive and direct Plaintiff's unlawful detention and deportation? *See generally* Mot. at 5.

- Were key federal officials named in the Complaint—including former Secretary of Homeland Security Kristi Noem; former Attorney General Pamela Jo Bondi; former Department of Justice lawyers Emil Bove III and Drew Ensign; and Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller—prime architects and drivers of the unlawful scheme to remove Venezuelan nationals outside the bounds of due process and subject them to injury? *Compare* Mot. at 6 with Resp. at 7-9.

- Were the "intended effects" of the Proclamation and implementing policies directed at specific individuals in Texas or were the intended effects nationwide? *Compare* Mot. at 7 with Resp. at 19-22.

- Was federal officials' decision to seemingly violate an order from this Court in D.C. the proximate cause of Plaintiff's tortious injuries? *Compare* Mot. at 5 with Resp. at 11.

Given the issues of intent and credibility implicated by these factual questions, oral testimony will almost certainly be most effective and productive. *Int'l Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 631 (D.C. Cir. 1973) (observing that live questioning is preferred to "avoid the peril of 'canned' affidavits and counsel-assisted, or even counsel-drafted, responses to interrogatories."). Indeed, the U.S. Supreme Court has described oral examination as "the greatest legal engine ever invented for the discovery of truth," *California v. Green*, 399 U.S. 149, 158 (1970) (citation omitted), whereas "written submissions are a wholly unsatisfactory basis for decision" when "credibility and veracity are at issue." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).[3]

Accordingly, Plaintiff proposes a 90-day discovery period to allow for the following:

## A. Depositions

1. A Rule 30(b)(6) deposition of a designee with knowledge of the events described in the Complaint from the Department of Justice.

2. A Rule 30(b)(6) deposition of a designee with knowledge of the events described in the Complaint from the Department of Homeland Security.

3. A deposition of Deputy Assistant Attorney General for the Office of Immigration

---

[3] The credibility and veracity of the Government's account of the operative conduct are directly at issue in this case, which the Complaint alleges in detail. For example, Plaintiff alleges that Mr. Ensign falsely represented to this Court that he was unaware whether removal flights would occur, even though he had been present when Mr. Bove had instructed him that the flights take of "no matter what." Compl. ¶¶ 91, 97. Plaintiff further alleges that he was deliberately misled about his destination when told he was being returned to Venezuela while in fact bound for El Salvador, Compl. ¶¶ 75, 78–79, and that the Government misrepresented its ability or authority to secure his return from CECOT. Compl. ¶¶ 112–113.

Litigation Drew Ensign.

4. A deposition of Acting DHS General Counsel, Joseph Mazzara.

## B. Requests for Production

1. All documents and communications concerning Plaintiff's identification, detention, deportation, and ultimate release to Venezuelan, including but not limited to:

    a. Plaintiff's full immigration file;

    b. all materials related to Plaintiff's designation as a member of Tren de Aragua ("TdA") and subsequent arrest in Texas;

    c. all materials related to Plaintiff's placement on the March 15, 2025 flight to El Salvador from Texas; and

    d. all materials related to Plaintiff's inclusion as a class member in *J.G.G. v. Trump*, 25-cv-00766 (D.D.C.).

2. All documents produced to Plaintiff's class action counsel in *J.G.G. v. Trump*, 25-cv-00766 (D.D.C.).

3. All documents and communications from the White House, DOJ, DHS headquarters, and/or ICE headquarters to ICE field offices concerning identification, apprehension, detention, and removal of suspected TdA members specifically, or Venezuelan nationals generally, pursuant to the forthcoming or issued AEA Proclamation.

4. All documents and communications from the White House, DOJ, DHS headquarters, and/or ICE headquarters to ICE field offices concerning identification, apprehension, detention, and removal of suspected TdA members specifically, or Venezuelan nationals generally, pursuant to the Memorandum for Law Enforcement Officers issued by DOJ on March 14, 2016.

5. All documents and communications showing that the Proclamation and/or Memorandum for Law Enforcement Officers were intended to target specific individuals in Texas.

6. All documents and communications relating to the ultimate decision that the March 15, 2025 flights continue to El Salvador after issuance of this Court's TRO, *cf.* Defs.' Resp. to Court Order, *J.G.G. v. Trump*, 25-cv-00766, ECF No. 195 (D.D.C.), including documents sufficient to show where each participant was located during each significant act.

7. All documents and communications with GlobalX concerning transporting detainees from Texas to El Salvador between January 21, 2025 to the present date.

8. All documents and communications between the White House and DHS headquarters regarding the events of March 15 and March 16, 2025.

## C. Interrogatories

1. Identify each federal official, including name, title and duty station, who:

   a. designated Plaintiff under the AEA;

   b. approved Plaintiff's initial detention;

   c. directed Plaintiff's transfer(s) within detention facilities;

   d. directed Plaintiff's transport to the airport on March 15, 2025 where GlobalX flights were waiting; and

   e. authorized the GlobalX flights to continue after this Court's TRO.

2. For each act identified pursuant to the Interrogatory above, state where that act occurred.

3. Identify each person who articulated the position or received the position that the Minute Order permitted transfer.

## CONCLUSION

For the reasons set forth herein, and pursuant to F.R.C.P. 12(i) and F.R.C.P. 7(b), Plaintiff

respectfully requests that, prior to any decision to dismiss Plaintiff's case under Rule 12(b)(3), this

Court (a) order a 90-day discovery period to allow for the discovery described above on facts

probative of proper venue; (b) allow supplemental briefing thereafter on venue; and (c) schedule

a hearing on the pending Motion.

Respectfully submitted,

/s/ Mimi Marziani
Mimi Marziani

Norman L. Eisen (D.C. #435051)
Stephen A. Jonas (D.C. #90037069)
Joshua G. Kolb (#NY0628)
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@democracydefenders.org
steve@democracydefenders.org
joshua@democracydefenders.org

-and-

Mimi Marziani*
Texas Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens*
Texas Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez*
Texas Bar No. 24109935
jgonzalez@msgpllc.com
Andrew Silberstein*
New York Bar No. 5877998
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

*Admitted Pro hac Vice

**ATTORNEYS FOR PLAINTIFF**

10

## CERTIFICATE OF CONFERENCE

On June 17, 2026, the undersigned counsel conferred via email with counsel for Defendant Stephen R. Terrell as to the relief sought in this motion who stated that Defendant is opposed.

*/s/ Mimi Marziani*
Mimi Marziani