**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEIYERVER ADRIÁN LEON RENGEL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 1:26-cv-01008 (JEB) |

**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## INTRODUCTION

Plaintiff has established that the D.C. Circuit never adopted an exclusive effects test in *Reuber,* and that no subsequent Circuit panel has done so since. *See* Motion for Interlocutory Appeal ("Mot'n.") at 11-14 (ECF No. 31); Response to Motion to Dismiss ("MTD Opp'n") at 15-19 (ECF No. 21). Despite that express declination, D.C. district courts have repeatedly taken for granted that *Reuber* did adopt such a test when interpreting the act or omission prong of § 1402(b). This error stems from district courts extrapolating *Reuber's* recitation of the holding from an out-of-circuit case, *Forest,* and treating that holding as the D.C. Circuit's own. But recitation by the D.C. Circuit of a holding from another case does not suffice as a holding of the D.C. Circuit. Unfortunately, this error has propagated across D.C. district courts, as Defendant itself emphasizes. Opposition to Plaintiff's Motion for Interlocutory Appeal ("Opp'n") at 6 (ECF No. 32). An

entrenched misreading of binding precedent, uncorrected in forty years and never once examined by the Circuit itself, presents precisely the type of question that § 1292(b) exists to resolve.

Moreover, Defendant's Opposition does not offer an answer to the error. Instead, Defendant likewise assumes that the D.C. Circuit adopted an exclusive effects test—which it did neither in *Reuber* nor in any ensuing case in the forty years since—and supports that contention with a passage from *Reuber* describing what the plaintiff there failed to show. However, that passage was merely offered by the court in distinguishing *Forest,* before immediately declining to adopt *Forest's* rationale. *Reuber v. U.S.*, 750 F.2d 1039, 1048; *see* Opp'n 4-5. As Part II explains, the passage Defendant quotes is not *Reuber's* holding, nor does it adopt an effects test. And even more telling is that Defendant never confronts the D.C. Circuit's express refusal to "adopt and expand *Forest's* rationale," and its statement that the plaintiff there "ha[d] not alleged an act in the District which ma[de] venue over his FTCA claim proper." *Reuber*, 750 F.2d at 1047–48 (emphasis added). Defendant thus makes no substantive or textual argument that the D.C. Circuit adopted an exclusive effects test in *Reuber.*

Defendant's discussion of *Beattie* is similarly based on an erroneous interpretation of the Supreme Court's opinion in *Sosa,* which merely rejected using headquarters theory to overcome the foreign country exception under § 2680(k). *Sosa v. v. Alvarez-Machain*, 542 U.S. 692, 705 (2004); see Opp'n at 7. As explained in Part III below, *Sosa* says nothing about § 1402(b), and *Beattie's* venue analysis remains binding on this Court.

Finally, Defendant's argument that Plaintiff may not appeal relief he supposedly requested similarly misreads the record and the law. Plaintiff's primary position was, and remains, that venue is proper in D.C. Transfer was requested only in the alternative. *See* MTD Opp'n at 25–26.

Defendant does not point to authority holding that pleading alternative relief forfeits the right to challenge the ruling that would make such alternative relief necessary.

Both questions presented satisfy § 1292(b). Question One is controlling because its answer determines whether this action can proceed in D.C.; it presents a substantial ground for difference of opinion because D.C. district courts have employed a reading of *Reuber* that conflicts with the text of that Circuit opinion; and immediate appeal will materially advance the litigation for the reasons set forth in Part II. Question Two is controlling because it determines whether Plaintiff's claims must all be heard in one forum or in two; it presents a substantial ground for difference of opinion because no Circuit court has addressed *Beattie's* single-wrong holding as it is presented here; and its resolution alongside Question One would conserve judicial resources.

## ARGUMENT

### I. This Court should certify both questions presented for Interlocutory Appeal

Section 1292(b) exists precisely for legal questions that would otherwise evade appellate review, such as transfer orders that are not independently appealable. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1460–61 (Fed. Cir. 1990) (cited by Defendant, Opp'n at 3). As described in Plaintiff's Motion, and further below, the questions presented satisfy § 1292(b)'s three prongs. And absent certification, questions that this Court has described as "undoubtedly close," will never reach an appellate court and will evade review altogether. Mem. Op. 8; *see In re Sw. Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963); *In re Red Barn Motors, Inc.*, 794 F.3d 481 (5th Cir. 2015). This is precisely the scenario that § 1292(b) was designed to prevent. *See* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3930 (1996) (§ 1292(b) is a "useful means of securing review of questions that elude effective review on appeal from final judgment"). Indeed, in *Federal Firefighters,* which Defendant has not addressed, the

court certified an order resolving a motion to dismiss or transfer for improper venue, reasoning that although "the venue issue is not free from doubt," its resolution would "establish the process by which all [similar such] disputes. . .will be resolved." *Fed. Firefighters Ass'n, Loc. 1 v. Metro. Washington Airports Auth.*, No. CIV.A. 88-1022-LFO, 1988 WL 21412, at *2 (D.D.C. Sept. 23, 1988).

While Defendant correctly points out that "Section 1292(b) authorizes certification of *orders* for interlocutory appeal," rather than "certification of questions for interlocutory appeal," *Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009), Plaintiff only attempts the former. Plaintiff asks this Court to amend its August 3 Order to include the § 1292(b) statement identifying the controlling questions that the Order presents. This is what the statute plainly requires.

Defendant's remaining objections conflate two distinct statutes, and two distinct rulings. This Court found venue was improper in D.C., and thus transfer was required under § 1406(a). Defendant's argument conflates the Court's mandatory transfer with a discretionary transfer under § 1404(a). But § 1404(a) played no part in this Court's August 3 Order, because this Court found that it had no discretion to maintain venue in D.C.

Plaintiff accordingly does not challenge this Court's choice to transfer rather than to dismiss and instead challenges the ruling that made transfer necessary. *Compare In re Wyoming Tight Sands Antitrust Cases*, 715 F. Supp. 307, 309 (D. Kan. 1989) (holding that § 1404(a) discretionary transfer is not a controlling question of law), *with Johns-Manville Sales Corp. v. United States*, 796 F.2d 372, 373 (10th Cir. 1986) (granting petition for interlocutory appeal after certification by district court of venue determination for FTCA claims under § 1402(b)). *Garner,* on which Defendant relies, supports this conclusion, as it holds that certification is inappropriate for "challenges to a judge's *discretion* in granting or denying transfers." 433 F.2d at 120 (emphasis

added). Plaintiff makes no challenge to the Court's discretion. If, as Plaintiff contends, venue is proper in D.C., then transfer based on a § 1406 legal determination of improper venue was erroneous.

Finally, the questions presented are pure questions of law because both turn entirely on the meaning of *Reuber, Beattie,* and the act or omission prong of § 1402(b). The Court denied venue discovery because further factual development "would not alter the Court's determination." Mem. Op. at 13. Defendant identifies no fact that the D.C. Circuit would need to resolve to answer either question presented. Thus, the dispute is over two pure questions of law that the D.C. Circuit can "decide quickly and cleanly without having to study the record." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (cleaned up).

**II. The first question presented satisfies all three § 1292(b) prongs.**

Defendant's Opposition does not engage with the merits of Question One. Rather than respond to the textual analysis in Plaintiff's Motion, Defendant relies on one sentence from *Reuber*: "[i]n this case, unlike *Forest,* Reuber pointed to no tortious conduct of any government employee aimed at the District, or even any conduct which foreseeably would produce consequences in the District." *Reuber*, 750 F.2d at 1047; *see* Opp'n at 4-5 (quoting same). That sentence is not a holding, it does not adopt an effects test, and it cannot bear the weight Defendant places on it.

The sentence opens, "unlike *Forest*," which is a signal of distinction, rather than adoption. This is because the court was explaining why the plaintiff could not prevail even if the court were to extend *Forest's* rationale. *Reuber* then explicitly ***rejected*** extension of that rationale, stating "[w]e thus decline Reuber's invitation to adopt and expand *Forest's* rationale," because the plaintiff "ha[d] not alleged an ***act*** in the District which ma[de] venue over his FTCA claim proper."

*Id.* at 1047-48 (emphasis added). Thus, the court applied a situs-of-the-conduct inquiry. Defendant, however, quotes *Reuber's* description of an alternative holding it expressly declined to adopt, and then treats that description as this Circuit's holding. This is the exact error that has produced the district court decisions Defendant collects, and the divergence between the inquiry the D.C. Circuit applied in *Reuber* and the one its district courts have adopted is itself the substantial ground for difference of opinion that § 1292(b) requires. *See* Opp'n at 6.

The absence of any further substantive or textual analysis in Defendant's Opposition confirms this point. A court assessing certification must "analyze the strength of the arguments in opposition to the challenged ruling." *APCC Servs.*, 297 F. Supp. 2d at 98. Plaintiff challenges the ruling here by demonstrating, through *Reuber's* plain language, that the D.C. Circuit never adopted an exclusive effects test. That demonstration has not been rebutted. Instead, Defendant answers Plaintiff by restating the disputed conclusion itself before repurposing a rationale that *Reuber* expressly declined. Defendant's failure to rebut Plaintiff's challenge is not merely a briefing error but reflects the complete absence of D.C. Circuit authority adopting an exclusive effects test. That some district courts have applied an exclusive effects test does not demonstrate that the question is settled; instead, this fact underscores that the misreading of *Reuber* has been repeated and circuit-level correction is critical.

Finally, in responding to Question One, Defendant argues that *Beattie* is no longer good law on venue. Opp'n at 7. That *Beattie* remains good law is supported by decades of precedent, and is addressed in Part III as part of Question Two. But in any event, Question One asks what *Reuber* held, and that question does not turn on *Beattie*.

Measured against one another, these competing arguments weigh clearly in Plaintiff's favor. And this Court has itself supplied support for that assessment in describing the venue question as both "nuanced" and "undoubtedly close." Mem. Op. at 1, 8.

Further, Plaintiff has already demonstrated that Question One presents a controlling question of law because its resolution will determine whether this action must proceed in Texas, and because the substantially same question governs every FTCA claim arising from the March 15 and 16, 2025 removals. *See APCC Servs.*, 297 F. Supp. 2d at 96 (a question is controlling where it "could materially affect the course of litigation" and where it "affects a large number of cases"). Moreover, Defendant's argument that Plaintiff seeks to overrule *Reuber* is incorrect, and its reliance on the rule that "[o]ne three-judge panel. . . does not have the authority to overrule another three-judge panel," is therefore inapposite. *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). Plaintiff asks merely that the D.C. Circuit enforce *Reuber* as it is written: by clarifying that it never adopted an exclusive effects test at all. Such enforcement would not constitute overruling circuit precedent; rather it would establish, for the first time, the correct meaning of such precedent. Appellate review of this nature is precisely what § 1292(b) was designed to provide.

Defendant similarly ignores Plaintiff's discussion of *Campos* and *Loumiet* when it erroneously suggests that Plaintiff did not address the material advancement prong of § 1292(b). Opp'n at 8. Plaintiff's Motion explains that this Circuit's case law on the interaction between unconstitutional conduct and the discretionary-function exception is settled, while the identical question remains open in the Fifth Circuit. *Compare Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016) *with Campos v. United States*, 888 F.3d 724, 735 (5th Cir. 2018). Transferring this case to Texas would thus force onto another district court, and likely another court of appeals, a matter

of first impression that this Circuit settled a decade ago, thereby wasting the "scarce judicial resources" that § 1292(b)'s third prong is intended to conserve. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). Similarly, this case's progression would clearly not, as Defendant argues, "remain the same" regardless of outcome. Opp'n at 3. Reversal would return this action to a forum where the governing law is settled, rather than requiring the parties to brief and resolve an open question in another circuit. Those two postures are materially different.

Finally, Defendant overstates Plaintiff's position by arguing that his reading of § 1402(b) would allow plaintiffs nationwide to file FTCA claims in D.C. and force this Court to "become an expert in many States' substantive tort law." Opp'n at 5. That premise is backwards. Under *Richards,* the governing tort law is that of the place "where the act or omission occurred." 369 U.S. at 9-10. Because Plaintiff's position is that the operative acts occurred in D.C., this District's choice of law would supply the framework. And Defendant's hypothetical of nationwide filings likewise assumes a headquarters theory that Plaintiff does not advance. As discussed at length, Plaintiff's venue standard requires that named officials have performed discrete acts in D.C. that are themselves elements of the tort. Mot. at 14.

**III. The second question presented satisfies all three § 1292(b) prongs.**

In responding to Question Two, Defendant merely argues that because the Court "did not address" pendent venue, the question presented is not a basis for interlocutory review. Opp'n at 9. Defendant is not only mistaken regarding the Court's application of pendent venue in its August 3 Order but also fundamentally misunderstands Question Two.

*First,* the Court reasoned that transfer would not "unduly prejudice Plaintiff" because "had venue been proper here as to the negligence and IIED claims, it is unlikely that this would have established venue over the entire case" because of *Reuber's* "strong negative presumption against

courts finding discretionary pendent venue." Mem. Op. at 12-13 (quoting 750 F.2d at 1048–49). This pendent venue reasoning underlies the Court's August 3 Order, and it is properly presented for interlocutory appeal because the D.C. Circuit "may address any issue fairly included within the certified order." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 34 F.4th 1, 8 (D.C. Cir. 2022); *see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). And that the Court framed its reasoning conditionally does not place it beyond review, as that condition is precisely what Question One resolves. If the D.C. Circuit resolves Question One in Plaintiff's favor, that previously conditional reasoning becomes the operative obstacle to litigating in a single forum. The conservation of judicial resources therefore counsels strongly in favor of certifying Question Two alongside Question One.

Additionally, because Defendant ignores the Court's pendent venue reasoning, it fails entirely to engage with the merits of Question Two. And as discussed above with respect to Question One, this lack of argument on the merits supports Question Two's satisfaction of § 1292(b)'s second prong. *See APCC Servs.*, 297 F. Supp. 2d at 98 (court must assess the "strength of arguments in opposition").

*Second,* Defendant misapprehends Question Two. The Court's pendent venue reasoning is at issue precisely because pendent venue should not have played any role in its venue determination. That is because *Beattie* is binding D.C. Circuit law, and its single-wrong holding is not a *per se* pendent venue doctrine. *Beattie* held that in cases where all claims are brought under the FTCA and seek relief for "an essentially single wrong" against the same defendant on "very similar. . . proof," the suit is "a single cause of action with separate grounds for relief," and venue is "satisfied for the entire case." 756 F.2d at 101. While *Beattie* did also hold alternatively on

pendent venue, that alternative holding is not the basis for Question Two, and demonstrates further that its single-wrong holding does not fall squarely within pendent venue.

Therefore, the Court should not have applied *Reuber's* negative presumption to Plaintiff's case because that presumption only applies to pendent venue.

Moreover, *Reuber* declined application of pendent venue because the case there involved different claims under different statutes, as well as duplicative claims already pending in another court. 750 F.2d at 1048–49. Those features are not present here, and Plaintiff's counts do not depend on pendent venue because each count arises under a single statute, presents common proof, and involves the same witnesses. Compl. ¶¶ 141–62. *Beattie's* single-wrong doctrine, and the reasoning underlying it, should therefore govern. *Beattie* itself drew this distinction with *Reuber,* explaining that there the plaintiff sought to "completely. . . circumvent the FTCA's venue provisions" by attempting to anchor FTCA claims to a Privacy Act claim. 756 F.2d at 103 n.82. Such an attempt constitutes a paradigmatic example of pendent venue. Plaintiff's claims, like those made in *Beattie*, make no attempt to establish venue by bootstrapping claims across different statutes.

D.C. courts have confirmed this limiting principle. *See Bartel v. F.A.A.*, 617 F. Supp. 190 (D.D.C. 1985) (recognizing the propriety of *Beattie*'s venue analysis but declining to apply it where no FTCA claim was properly venued in D.C.); *Boggs v. United States*, 987 F. Supp. 11, 19 (D.D.C. 1997) (finding *Beattie* inapplicable because "plaintiff has not made any claims under the FTCA addressing possible tortious conduct by government officials in Washington D.C."). The principle underlying these cases is that where specific acts of tortious conduct by government officials are alleged in Washington, D.C., *Beattie's* single-wrong doctrine governs. Plaintiff makes just such allegations. Compl. 61, 89-91, 102-104.

Defendant argues that *Beattie* "does not remain good law," because its holding rested solely on "headquarters claims" that *Sosa* later rejected. *Sosa,* 542 U.S. at 705; *see* Opp'n at 7. First, that argument conflates the headquarters claims that anchored venue in *Beattie* with the single-wrong doctrine that carried the remaining claims. *Sosa* never addressed *Beattie's* single-wrong doctrine. Second, *Sosa* only held that headquarters claims do not overcome the foreign country exception under § 2680(k). Section 2680(k) is not implicated here. That Section turns on where the injury was suffered ("claim arising in"), rather than, as under § 1402(b), where the act or omission occurred. *See Sosa,* 542 U.S. at 712 n.9 (explaining that "Congress knew how to specify 'act or omission' when it wanted to"). Nor is there any indication that *Beattie's* venue analysis is otherwise overruled. In fact, the D.C. Circuit has described *Beattie* as "abrogated on other grounds." *Galvin v. United States*, 859 F.3d 71, 73 (D.C. Cir. 2017). Further, courts in D.C. have applied *Beattie*'s venue analysis for decades. *See Coltrane v. Lappin*, 885 F. Supp. 2d 228, 236 (D.D.C. 2012); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 98 (D.D.C. 2003); *U.S. SEC v. e-Smart Techs., Inc.*, 926 F. Supp. 2d 231, 237 (D.D.C. 2013); *Covey Run, LLC v. Washington Capital, LLC*, 196 F. Supp. 3d 87, 101 n.9 (D.D.C. 2016). That the parties genuinely dispute whether a binding circuit decision survives an intervening Supreme Court opinion is a question of law over which there is substantial ground for difference of opinion.

Finally, the conservation of judicial resources strongly favors certification of Question Two alongside Question One. The D.C. Circuit will already have the record and briefing on *Reuber* and § 1402(b) before it. Thus, the D.C. Circuit's resolution of Question Two will cost little beyond that which Question One already requires. Declining to reach Question Two while reaching Question One, by contrast, guarantees a subsequent dispute. Further, splitting the claims across D.C. and

Texas would offend principles of judicial economy and convenience, and would lead to piecemeal litigation. *See Beattie,* 756 F 2d at 103.

**IV. If the Court denies Plaintiff's motion for certification, it should stay the transfer of the case pending resolution of a petition for writ of mandamus**

Defendant faults Plaintiff for pursuing interlocutory appeal rather than mandamus, calling it a "procedural hurdle[] of his own making." Opp'n at 9-10. But seeking certification under § 1292(b) should come before the extraordinary relief requested under mandamus, as demonstrated by circuit courts treating a failed motion for certification under § 1292(b) as a strong factor in support of meeting the no adequate alternative requirement for a writ of mandamus. S*ee, e.g.*, *In re Chimenti*, 79 F.3d 534, 538-39 (6th Cir. 1996) ("Some courts of appeals have used this principle to deny mandamus where petitioners have failed first to seek permissive interlocutory review under 28 U.S.C. § 1292(b), or to explain why such relief would be inadequate."); *In re Ford Motor Co.*, 344 F.3d 648, 654 (7th Cir. 2002); *In re School Asbestos Litigation*, 977 F.2d 764, 773-74 (3d Cir. 1992). Nor was Plaintiff obliged to request a dismissal he does not seek in order to obtain appellate jurisdiction, particularly where § 1406(a) favors transfer over dismissal.

And, as discussed in Plaintiff's Motion, mandamus remains available to challenge the transfer order. United States Court of Appeals for the D.C. Circuit, *Handbook of Practice and Internal Procedures* § III.G.3 ("Any order by the district court transferring a case to another district is not appealable order. Therefore, litigants seeking to challenge such a transfer frequently file petitions for writ of mandamus with this Court. (citing *In re Scott*, 709 F.2d 717 (D.C. Cir. 1983) (per curiam) and collecting cases)."); *Ukiah Adventist Hosp. v. FTCA,* 981 F2d 543, 546 (D.C. Cir. 1992) (holding transfer order not appealable as final or under the collateral order doctrine, but reviewable on mandamus).

Accordingly, should the Court decline to certify, Plaintiff renews his request that the stay be extended to permit the filing of a petition for writ of mandamus.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court amend its August 3 Order to include the statement required by 28 U.S.C. § 1292(b), certifying the two questions presented for interlocutory appeal.

Respectfully submitted,

*/s/ Mimi Marziani*
Mimi Marziani

Norman L. Eisen (D.C. #435051)
Stephen A. Jonas (D.C. #90037069)
Joshua G. Kolb (#NY0628)
**Democracy Defenders Fund**
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@democracydefenders.org
steve@democracydefenders.org
joshua@democracydefenders.org

-and-

Mimi Marziani* (TX #24091906, NY #4729547)
Rebecca (Beth) Stevens* (TX #24065381)
Joaquin Gonzalez* (TX #24109935)
Andrew Silberstein* (NY #5877998)
**Marziani Stevens & Gonzalez PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com
asilberstein@msgpllc.com

**Admitted Pro hac Vice*

**ATTORNEYS FOR PLAINTIFF**