**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NEIYERVER ADRIÁN RENGEL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Civil Action No. 26-1008 (JEB)** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Neiyerver Rengel has moved for the Court to certify an interlocutory appeal of its August 3, 2026, Order transferring his case to the Southern District of Texas. See ECF No. 31 (Mot.); see also ECF Nos. 26 (Order), 27 (Mem. Op.). Although interlocutory appeal is permitted only in unusual circumstances, Plaintiff has persuaded the Court of the case for certification here. It will, accordingly, grant his Motion.

## I. Background

On March 15, 2025, Plaintiff, a Venezuelan national, was summarily deported from Texas to El Salvador, where he was held in the CECOT mega-prison. See Mem. Op. at 3–4. Alleging that he suffered severe mistreatment there, Rengel brought claims against the United States under the Federal Tort Claims Act for negligence, intentional infliction of emotional distress, abuse of process, and false imprisonment. Id. at 5; see ECF No. 1 (Compl.), ¶¶ 116–23, 141–62. The basis for these claims was that "officials in D.C." had "made the critical decisions concerning [Plaintiff's] deportation and treatment." Mem. Op. at 8; see Compl., ¶¶ 5–18.

The Government moved to dismiss the action for improper venue under Federal Rule of Civil Procedure 12(b)(3). See ECF No. 19 (MTD) at 1. In opposing dismissal, Plaintiff

contended that, even if the Court determined that venue was not proper in D.C., it should transfer the case to the Southern District of Texas instead of dismissing it outright. See ECF No. 21 (MTD Opp.) at 25–26 (invoking 28 U.S.C. § 1406(a)). The Court ended up taking that route. See Order at 1.

Its Opinion applied the FTCA's venue provision, which refers to the district in which the "act or omission complained of occurred." 28 U.S.C. § 1402(b). Circuit precedent, the Court noted, indicates that an "act 'occurs' in the jurisdiction where its effects are directed." Mem. Op. at 7–8 (quoting Reuber v. United States, 750 F.2d 1039, 1047 (D.C. Cir. 1985)). Because "Texas was . . . plainly the target of each of the major directives issued to implement the" policy under which Plaintiff was removed to CECOT, the "Executive Branch officials' conduct therefore 'occurred' [there] for FTCA venue purposes." Id. at 9. That was so "[e]ven assuming Reuber's effects-based test" was "narrow" and applied "only in the limited circumstances where conduct [was] 'directed specifically' at another district," since the "conduct that was tortious specifically as to" Plaintiff was so directed to the Southern District of Texas — where he was "detained and ultimately removed." Id. at 11 (quoting Reuber, 750 F.2d at 1047). The Court accordingly held that the case should be transferred to that district, though it stayed its transfer Order pending resolution of this Motion. See August 18, 2026, Minute Order.

Preferring that his case remain in this district, Rengel now seeks certification for interlocutory appeal of the Court's Order transferring the case to the Southern District of Texas.

## II. Legal Standard

The final-judgment rule generally limits federal courts of appeals to reviewing "final decisions" of district courts. See 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."

Cunningham v. Hamilton Cnty., 527 U.S. 198, 204 (1999) (quotation marks and citation omitted). Orders transferring a case under the change-of-venue statute, unlike those dismissing a case for improper venue under Rule 12(b)(3), generally "are not final appealable orders." Hill v. Henderson, 195 F.3d 671, 676 (D.C. Cir. 1999).

A district court may nonetheless certify a non-final order for appeal if it believes that such an order "[(1)] involves a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The party seeking certification "has the burden of establishing all three elements under § 1292(b)." Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric., 317 F. Supp. 3d 385, 393 (D.D.C. 2018). And that burden is substantial: "Because certification runs counter to the general policy against piecemeal appeals, this process is to be used sparingly." Sai v. Dep't of Homeland Sec., 99 F. Supp. 3d 50, 59 (D.D.C. 2015).

## III. Analysis

The Court addresses each of the § 1292(b) elements in turn.

### A. Controlling Question of Law

Plaintiff identifies two questions of law that, he says, are controlling: (1) whether, under the FTCA, venue is proper in the district where federal officials allegedly "performed" tortious acts or only in the district "to which the intended effects" of the acts "were directed"; and (2) whether venue over an entire FTCA action, comprising various claims "arising from a common course of conduct," may be established based on venue being proper for a subset of the claims. See Mot. at 1. Certification only requires, however, that the Court's Order involve "a" single "controlling question of law." 28 U.S.C. § 1292(b); see Yamaha Motor Corp., U.S.A. v.

Calhoun, 516 U.S. 199, 205 (1996); ECF No. 32 (Opp.) at 3 (similar). As the Court determines that the first question qualifies as "controlling," it need not address the second.

A controlling question of law is one that either "would require reversal if decided incorrectly" or that "could materially affect the course of litigation with resulting savings of the court's or the parties' resources." Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F. Supp. 2d 16, 19 (D.D.C. 2002) (citation omitted). The question of whether Plaintiff's allegations establish venue for his FTCA claims in D.C. qualifies as controlling in (at least) the second sense. It involves a "procedural determination that may significantly impact the action" — *i.e.*, that will determine where the litigation proceeds. APCC Servs., Inc. v. Sprint Commc'ns Co., L.P., 297 F. Supp. 2d 90, 96 (D.D.C. 2003) (collecting authorities). Further "supporting a conclusion that the question is controlling," its resolution may have a considerable "impact" on "other cases" presenting the same venue theory that Plaintiff advances here. Id.; see also Mot. at 8–9 & n.1 (citing recurring cases); Opp. at 6 (same). That an issue is of such "special difficulty and importance" generally "counsels in favor of immediate review." Geo Grp., Inc. v. Menocal, 607 U.S. 438, 452 n.5 (2026); Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009) (district courts "should not hesitate" to "certify an interlocutory appeal" involving "new legal question" or one of "special consequence").

The Government responds that certification would not conserve litigation resources because the suit would proceed along the same track to final judgment wherever it was venued. See Opp. at 4. But that response ignores important efficiency considerations. Because the FTCA directs application of the "whole law (including choice-of-law rules) of the place where the negligence occurred," rather than "of the place where the operative effect of the negligence took place," Plaintiff's claims will be determined according to at least D.C. choice-of-law rules.

Richards v. United States, 369 U.S. 1, 2–3, 11 (1962); see ECF No. 33 (Reply) at 8. Successful appeal of the venue question, then, would likely result in this case remaining before a court with greater familiarity with the applicable law. And this Court also has experience with the facts underlying Plaintiff's claims. See Mem. Op. at 1 (explaining that "[t]he facts underlying this case cover much familiar ground for this Court"). Just as this Court's experience with the relevant law and facts would have counseled against a discretionary transfer, so too does it counsel in favor of permitting an appeal that may render transfer unnecessary. Cf. Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70, 78 (D.D.C. 2013) (linking propriety of transfer to courts' relative "familiarity with the governing [state] laws"); Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior, 358 F. Supp. 3d 1, 9 (D.D.C. 2019) (same for "courts' respective knowledge of the parties and facts").

Nor is the Court convinced that interlocutory appeal would be futile. As explained below, and contrary to the Government's assertion, Plaintiff seeks to have the D.C. Circuit clarify, not overrule, its precedent in Reuber. Compare Opp. at 5, with Reply at 7. And while the ordinarily deferential abuse-of-discretion standard would apply on appeal, see Opp. at 4, the Court's exercise of its discretion to transfer this case rested upon its antecedent determination that venue was improper here, and a "district court by definition abuses its discretion when it makes an error of law." Shatsky v. Pal. Liberation Org., 955 F.3d 1016, 1031 (D.C. Cir. 2020) (citation omitted); see also Reply at 4–5.

B. Substantial Grounds for Difference of Opinion

"Mere disagreement" with a court's order does not suffice for certification; a movant must point to some meaningful ambiguity in controlling law — for instance, an "apparent inconsistency" between Circuit opinions or between the caselaw and "plain statutory language."

Jud. Watch, 233 F. Supp. 2d at 19–20 (citation omitted); see, e.g., Carr Park, Inc. v. Tesfaye, 229 F.3d 1192, 1193–94 (D.C. Cir. 2000). The Court has already identified the venue question at issue here as "nuanced" and "undoubtedly close" in light of the FTCA's language and Circuit precedents construing it. See Mem. Op. at 1, 8. The Government responds that the existence of a close question does not always warrant certification. See Opp. at 2. That is true enough as a general matter. Here, however, the uncertainty results from the shakiness of a load-bearing precedent.

As noted, Reuber held that the plaintiff had "not alleged an act in the District" that made "venue over his FTCA claim proper" there. See 750 F.2d at 1048. That holding did not address, and the opinion's language leaves unclear, whether venue would have been proper in D.C. had the plaintiff alleged conduct that occurred there, the effects of which were targeted elsewhere — *i.e.*, the scenario presented by this case. Id. at 1046–48. A subsequent case, Beattie v. United States, 756 F.2d 91 (D.C. Cir. 1984), accepted a "headquarters" theory of venue under the FTCA that was seemingly in some tension with Reuber. See id. at 100; see also id. at 103 n.82 (citing Reuber for a distinct proposition). That is hardly clarifying, especially since the Supreme Court has rejected such a theory in a related context. See Sosa v. Alvarez-Machain, 542 U.S. 692, 700, 711–12 (2004) (rejecting "headquarters" theory for exception to FTCA's sovereign-immunity waiver for "[a]ny claim arising in a foreign country," 28 U.S.C. § 2680(k)); see also, e.g., Gill v. United States, 415 F. Supp. 3d 127, 142 (D.D.C. 2019) (joining other courts in this district in rejecting FTCA venue theory predicated upon "mere involvement" of officials in D.C.). In any event, Plaintiff disclaims a "headquarters theory," insisting instead that he satisfies a standard under which "named officials have performed discrete acts in D.C. that are themselves elements of the tort." Reply at 8. As to the viability of that particular standard, the Court finds a distinct

"dearth of precedent" in or beyond this Circuit — precisely what can "establish" a "substantial ground for difference of opinion." Air Transp. Ass'n, 317 F. Supp. 3d at 393 (citations omitted); see Johnson v. Washington Metro. Area Transit Auth., 790 F. Supp. 1174, 1180 (D.D.C. 1991) (granting certification where there was "a possible intracircuit split on the issue" and "[e]ven absent this split the case law [was] confused").

C. Material Advancement of Litigation

Finally, the Court agrees that certification has the potential to "hasten or at least simplify the litigation in some material way." Molock v. Whole Foods Mkt. Grp., Inc., 317 F. Supp. 3d 1, 6 (D.D.C. 2018). As already noted, if the litigation can proceed in this district, that may serve efficiency goals given this Court's experience with the relevant facts and law. See *supra* at pp. 4–5; see also Edward H. Cooper, 16 Wright & Miller Fed. Prac. & Proc. Juris. § 3930 (3d ed. Apr. 2026 Update) (noting material-advancement element is "closely tied" to controlling-question element). Plaintiff also points out that the case is likely to present threshold legal questions that are settled in this Circuit but remain open in the Fifth Circuit, potentially prolonging the litigation if it proceeds in Texas. See Mot. at 10; see also Reply at 7 (noting that Government does not dispute this point).

The Government counters that certification would "neither hasten nor simplify this litigation" because it increases the likelihood of multiple appeals — now for the venue question, and later for whatever questions arise on the merits. See Opp. at 8; see also Mahoney v. United States Capitol Police Bd., 566 F. Supp. 3d 22, 33 (D.D.C. 2022) (denying certification to avoid piecemeal appeals). In this instance, however, that argument proves too much. It would make transfer orders categorically ineligible for interlocutory appeal, which is belied by the caselaw. See, e.g., Lewis v. Hogwood, 300 F.2d 697, 697 (D.C. Cir. 1962) (interlocutory review of

transfer order); Wyndham Assocs. v. Bintliff, 398 F.2d 614, 616 (2d Cir. 1968) (same); Fed. Firefighters Ass'n, Loc. 1 v. Metro. Wash. Airports Auth., 1988 WL 21412, at *2 (D.D.C. Sep. 23, 1988) (certifying appeal of denial of motions to dismiss or transfer). Additionally, the Court must account for the fact that, if it denies certification, Plaintiff can still challenge its transfer order via a writ of mandamus in this Circuit. See Microsoft Corp. v. Baker, 582 U.S. 23, 30 (2017). Indeed, Rengel has indicated that he will take that step if the Court denies certification. See Mot. at 18–19. For practical purposes, then, the options before the Court are to certify its transfer order for interlocutory appeal, to stay its transfer order while mandamus proceedings progress, or to let transfer proceed and potentially require the parties to litigate a mandamus action in this Circuit while the underlying litigation moves forward in Texas. Of those options, the Court has little trouble concluding that the first is most apt to "simplify the litigation." Molock, 317 F. Supp. 3d at 6.

## IV. Conclusion

The Court accordingly ORDERS that:

1. Plaintiff's [31] Motion for Certification for Interlocutory Appeal is GRANTED;
2. The Court's [26] Order transferring this case to the Southern District of Texas remains STAYED; and
3. Upon disposition of the appeal, or upon an order from the D.C. Circuit declining to hear it, the parties shall file a Joint Status Report within 7 days.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 1, 2026